ROCCO CALDARO AND NORA FAHEY, PLAINTIFFS-RE-SPONDENTS, v. MARTIN J. FERBER, SHERIFF OF BERGEN COUNTY, DEFENDANT-APPELLANT.

Argued November 7, 1962—Decided February 18, 1963.

*Mr. Abram A. Lebson* argued the cause for defendant-appellant.

*Mr. Roger H. McGlynn* argued the cause for plaintiffs-respondents (*Messrs. McGlynn, Stein & McGlynn,* attorneys; *Mr. Roger H. McGlynn,* of counsel).

The opinion of the court was delivered by

SCHETTINO, J.   This is a class action for a declaratory judgment and for ancillary injunctive relief in which plaintiffs, duly appointed and regularly employed court attendants in Bergen County, seek a determination that defendant sheriff could not lawfully transfer plaintiffs and other court attendants similarly situated to the county jail to act as jail keepers. The defendant admits such transfers for temporary periods of not more than ten days to two weeks when regularly employed personnel in the jail were not available for such duties. The trial court denied plaintiffs' motion for summary judgment and granted defendant's countermotion for dismissal of the complaint on the ground that plaintiffs failed to exhaust their administrative remedies.

The Appellate Division reversed.   It found that plaintiffs' administrative remedies need not have been exhausted because the matter turned solely on a question of law, *i. e.,* a statutory construction of *N. J. S.* 2A:11–32, which provides for and defines the duties of court attendants.   Finding their duties restricted by the statute to those of a constable attending court, the Appellate Division reviewed the practice of having

constables, and now court attendants, attend the courts, and by contrasting their duties with those of jail keepers, concluded that the statutory duties of the position of court attendant do not encompass service in the county jails as keepers thereof, nor permit the transfer of attendants to the latter position, even for a temporary period. 74 *N. J. Super.* 128, 136–137 (1962). We granted certification on defendant's petition. 38 *N. J.* 179 (1962).

Court attendants are appointed by the sheriff of each county to attend upon the law division of the superior court and the county court in their county and to perform those duties which were performed by constables when summoned to attend such courts. *N. J. S.* 2A:11–32. In addition, all court attendants in the competitive class of civil service have, by virtue of their appointment, the power to act as officers for the detection, apprehension, arrest and conviction of offenders against the law. *N. J. S.* 2A:154–3. Jail keepers in Bergen County, also appointed by the sheriff, are responsible for proper maintenance and protection of jails under his jurisdiction and for the custody and keeping of prisoners confined therein, and have the same power and authority as constables. *N. J. S. A.* 30:8–18. Both court attendants and jail keepers are in the competitive class of civil service and have been classified separately.

From time immemorial, the general duty of all constables, both in England and the United States, was to keep peace within their respective districts, 1 *Blackstone, Commentaries* 355–56 (*Chitty ed.* 1895), although in time they acquired other duties, usually in connection with the judicial process. Thus, constables have been called upon to serve writs, attend the sessions of designated courts, take custody of juries and discharge other functions assigned to them by statute. See *Allor v. Board of Auditors,* 43 *Mich.* 76, 4 *N. W.* 492 (*Sup. Ct.* 1880) ; *Rich v. Industrial Comm'n.,* 80 *Utah* 511, 15 *P. 2d* 641 (*Sup. Ct.* 1932) ; 4 Holdsworth, *A History of English Law* 122–25, 156 (1924). And New Jersey was no exception. The constable's oath has not changed in over 160

years (compare *Paterson, Laws* (1800), *p.* 286, with *R. S.* 40:41–39) and attests to his three-fold position as conservator of the peace, civil officer, and ministerial officer of the courts. See *Ewing, A Treatise on the Office and Duty of Justice of the Peace, etc.,* 190–95 (1805). The latter duties were in evidence in the colony of East Jersey as early as 1678. *Cox v. Passaic Common Pleas,* 45 *N. J. L.* 328 (*Sup. Ct.* 1883).

Although historically both the constable and sheriff were peace officers, they were separate institutions, and all responsibility connected with the jails fell to the sheriff, with the jailer being but the sheriff's agent. 1 *Blackstone, supra,* at *pp.* 343–46. Early New Jersey statutes also indicate that the office of constable and its duties were distinct from those of the sheriff and jailer, *Paterson, Laws* (1800), *pp.* 203, 318, and separate reference to these positions still abound. *E. g., N. J. S.* 2A:151–43; *N. J. S. A.* 10:3–1; *R. S.* 30:8–1; *N. J. S. A.* 43:10–18.26.

The Legislature has long recognized that the court attendant's duties are more extensive than "preserving order in the court, taking charge of the jury, and other work incidental to the trial of cases." 74 *N. J. Super.,* at *pp.* 134–135. In statements appended to bills enacted to regulate the fees of court attendants, it was noted that "In addition to their duties as attendants in the courts, they are used by the sheriff to serve all grand jury subpoenas, summon all grand, struck and petit jurors, subpoena all witnesses needed by the State in criminal cases, to make arrests on capias after indictment, to serve the following civil writs: Summons and Complaint, Writs of Ne Exeat, Attachment, Execution, Replevin, Citation and Petition in Divorce. To summon election officers, for duty as such, and are subject to duty as watchman in attachment action. * * *" *Assembly Bill No.* 79 (1919) (enacted as *L.* 1919, *c.* 24). They are "subject to call at all hours in cases of strikes and riots," *Assembly Bill No.* 79 (1920) (enacted as *L.* 1920, *c.* 8), and are required to "transport dangerous criminals and insane inmates to various insti-

tutions. * * * This bill will create a standard of compensation in keeping with their added duties and responsibilities." *Assembly Bill No.* 200 (1947) (enacted as *L.* 1947, c. 244).

The issue before us involves the authority of the sheriff to transfer court attendants under the Civil Service Act. The over-all purpose of the civil service law is to secure for state, county and municipal government efficient public service in all its many functions. *Borough of Park Ridge v. Salimone,* 21 *N. J.* 28, 44 (1956); *Walsh v. Department of Civil Serv.,* 32 *N. J. Super.* 39, 43 (*App. Div.* 1954). Efficient public service requires civil administrators, like defendant sheriff, to make comprehensive use of their departments' surplus manpower in cases of temporary need and emergency. "The welfare of the people as a whole, and not specifically or exclusively the welfare of the civil servant, is the basic policy underlying the law * * *." *Borough of Park Ridge, supra.*

*R. S.* 11:1–7 provides that the Civil Service Commission may prescribe, amend and enforce rules and regulations for carrying out the above-stated object and purpose of the Civil Service Act. Pursuant thereto, the Civil Service Commission has detailed the circumstances under which temporary transfers in state and local government services can be made. *Civil Service Rule* 53, upon which defendant relies, provides in part:

"1. *Transfers may be made as follows:*

 *         *         *         *         *         *         *         *

(e) The transfer of an employee for a temporary period not to exceed six months from one class in a department, institution or organization unit, to the same or another class in another department, institution or organization unit may be made in order to bring about a better distribution of persons in the service or to effect economies or to make available from one or more central supply pools extra stenographic, clerical, messenger or other service needed for limited periods or to provide training sought by employees or required by appointing authorities. No such transfer shall be made without the consent of the appointing authorities from whose and to whose working forces such transfer is proposed and no employee shall be

transferred or assigned as a result of such transfer to a position involving duties for which he is not qualified as indicated by his experience, training and record of service. Any employee who is unwilling to accept a transfer under these provisions shall have reasonable opportunity to be heard in his own behalf."

The measure of the validity of *Rule* 53, as applied to the situation before us, is the Civil Service Act. Although this rule, however desirable, "may not transcend the scope of the statute, nor expand nor limit the statutory provisions," *Kaplan, The Law of Civil Service* 104 (1958); *Abelson's, Inc. v. New Jersey State Board of Optometrists,* 5 *N. J.* 412, 424 (1950), when challenged, the rule does have in its support the presumption, although rebuttable, of validity. *In re Weston,* 36 *N. J.* 258, 263 (1961).

Turning then to the Civil Service Act, we find provisions regarding transfers. *Subtitle* 2, entitled "State Service," deals with transfers in a comprehensive manner by providing for absolute and periodical or occasional transfers of employees. *R. S.* 11:11-3. *Subtitle* 3, "Counties, Municipalities and School Districts," also treats of transfers, but only in a limited situation, *i. e.,* a permanent transfer of an employee, at his request, from a certain position in one office, department or institution to a similar position in another office, department or institution. *R. S.* 11:22-8. The argument is made that, inasmuch as *R. S.* 11:21-4 provides that "After the adoption of the civil service act * * * by any county * * * no person shall be * * * transferred * * * in the civil service of such county * * * in any other manner or by any means other than those prescribed by this subtitle," county and municipal transfers are limited by *R. S.* 11:22-8.

We cannot so construe *R. S.* 11:21-4. It has long been recognized that the Civil Service Act must be liberally construed to effectuate the basic policy underlying the law. *Borough of Park Ridge v. Salimone, supra.* Although we there cautioned that a liberal policy of construction gives the court no license to disregard the clear meaning of the law, and all reasonable doubts must be resolved in favor of the

express provisions of the statute, as between two possible constructions of a statute, "the one should be adopted which effectuates rather than defeats the legislative purpose." *State Department of Civil Service v. Clark*, 15 *N. J.* 334, 341 (1954). We find no reference to temporary transfers under *subtitle* 3, and likewise no implied prohibition against such transfers. Thus, the language of that section must be read in light of the Commission's rule-making power as incorporating within the term "transfer" as used therein other transfers prescribed by Commission rules not inconsistent with *R. S.* 11:22–8.

The function of the rules promulgated by the Commission is to fill in the details for the complete operation of the law. *Rule* 53(1) encompasses just about every conceivable transfer situation—from transfers in the same class through transfers to another class at higher or lower maximum rate of compensation to transfers of veterans unable to perform their duties because of disability—and provides as its recurring theme the needs of and economies within the service, particularly in the paragraph dealing with temporary transfers. Thus *Rule* 53 not only fills in a statutory void, but is compatible with the various sections of subtitle 3 and implements the over-all purpose of the civil service law.

Although we hold that *Rule* 53(1)(e) authorizes defendant sheriff to transfer temporarily court attendants to "another class in a department, institution or organization unit," his conduct is still circumscribed by those rules, consistent with efficiency in the service and the welfare of the people as a whole, which are also for the employee's protection. Thus, no transfer may be made when "the person sought to be transferred * * * is not within the age limits if there are any prescribed, [or] does not possess the physical qualifications or the experience and training required for the efficient performance of the duties of the position to which transfer is sought," *Rule* 53(2)(c), or when "the duties to be performed in the position to which transfer is sought require tests or qualifications essentially different from or higher than those

required for original entrance to the test for the position from which transfer is sought." *Rule* 53(2)(d). That the duties may be different but the transfer not prohibited is clear, not only from the foregoing rules, but from the fact that *Rule* 53(1)(e) allows temporary transfers from one class to another even though "class or class positions" is defined in *Rule* 64 as "a group of positions in the classified service * * * sufficiently similar in respect to the duties, responsibilities and authority thereof that the same descriptive title may be used to designate each position allocated to the class. * * *"

We cannot say, on the record before us, that the sheriff failed to comply with the above-mentioned safeguards. Differences in the two positions have been called to our attention. Some, such as the fact that court attendants regularly work from 9 A. M. to 4 P. M. while jail keepers work in shifts around the clock, have no bearing on the qualifications, experience or training required of the transferee, and even if working hours were relevant, the Legislature has acknowledged that court attendants "are on duty and on call at all hours to perform the duties required of them, in addition to the actual attendance upon the courts." *Assembly Bill No.* 200 (1947), *supra.* "All of these extra duties must be performed after court hours. * * *" *Assembly Bill No.* 79 (1920), *supra.*

Other differences are of more substance. For example, the civil service specifications emphasize knowledge of court procedure for court attendants, and knowledge of problems encountered in work involving the rehabilitation, care and custody of prisoners for jail keepers. While the court attendant is not concerned with rehabilitation, he does have the care and custody of prisoners for temporary periods. Whether that would qualify him to serve temporarily as a jail keeper we cannot say. This presents a problem within the special competence of the Civil Service Commission.

Those differences of substance indicate to us, not that the sheriff could not have made a valid transfer, but that plaintiffs should have submitted their case to the Civil Service

Commission (assuming, first, an adverse result in the hearing provided for by *Rule* 53(1)(e)) for its determination as to whether the duties of jail keeper require tests or qualifications essentially different from or higher than those required for original entrance to the test for court attendants, and if not, whether the transferees here involved possess the physical qualifications or experience and training required for the efficient performance of the duties of jail keeper. If still dissatisfied, *R. R.* 4:88–8 gives plaintiffs the simplest and most effective mode for judicial review of the Commission's action.

The judgment of the Appellate Division is reversed and the matter is remanded to the trial court for the entry of a judgment in conformity herewith, without costs.

FRANCIS, J. (concurring). The Legislature adopted the Civil Service Acts in order to provide "a modern personnel system" for positions in the classified service of the State, counties and municipalities. *R. S.* 11:4–1, 11:19–2, 11:21–4. The Civil Service Commission was created and given general authority to prescribe, amend and enforce rules and regulations in order to effectuate that statutory purpose. *N. J. S. A.* 11:1–1, *R. S.* 11:1–7. The Commission was empowered also to "secure compliance [with its rules] both within the service of the state, and a county, municipality, or school district operating under the provisions of subtitle 3 of this title (§ 11:19–1 *et seq.*)." *R. S.* 11:1–7(d).

Pursuant to the authorization, the Commission adopted Rule 53, entitled "Transfers in state and local government services." So far as pertinent it provides as follows:

"1. *Transfers may be made as follows:*

\*      \*      \*      \*      \*      \*      \*      .   \*

(e) The transfer of an employee for a temporary period not to exceed six months from one class in a department, institution or organization unit, to the same or another class in another department, institution or organization unit may be made in order to bring about a better distribution of persons in the service or to effect economies \*   \*   \*."

In the absence of any plainly restrictive statutory declaration, the broad language of that rule would authorize the Sheriff to make a *temporary transfer or assignment* of a court attendant to act as a jail keeper, when in his discretion circumstances (such as vacation periods, temporary shortage or inadequate numbers of jail keepers, etc.) warrant such action in the public interest. I find no such restriction. It is suggested that *R. S.* 11:22–12 which provides

"No person shall be appointed or employed under any title not appropriate to the duties to be performed nor assigned to perform duties other than those properly pertaining to the position which he legally holds."

stands in the way of the Sheriff's action here. In the framework of the entire Civil Service legislation this section may be construed reasonably to refer to and forbid the *permanent* assignment of an employee to perform duties unrelated to the position he holds in the classified service. The same may reasonably be said of *N. J. S. A.* 11:21–4 which provides:

"After the adoption of the civil service act of 1908 or this subtitle by any county, municipality or school district, no person shall be appointed, transferred, reinstated, promoted, reduced or dismissed as an officer, clerk, employee or laborer in the civil service of any such county, municipality or school district in any other manner or by any means other than those prescribed by this subtitle."

It, too, must be read in the entire context of the statute which includes the specific grant of authority to the Commission to adopt rules and regulations so as to bring employment in the public service within the description of a "modern personnel system."

*R. S.* 11:11–3, relating to the State service, says that the "chief examiner and secretary shall provide *by rule,* approved by the commission," for the periodical or occasional transfer of employees for a period not to exceed six months "without regard to class or department, * * * in order to better the distribution" of personnel or to effect economies. (Em-

phasis added)    It does not follow from the fact that this section is part of the over-all legislation relating to the State service that the Legislature intended to limit the rule-making power to temporary transfers of *State* employees.    Certainly there is no express statement to that effect.    A fair implication is that the lawmakers desired to impose a mandate to adopt a broad and general type of rule dealing with the subject on the State scene but to leave regulation of the matter in the county and municipal service to the discretion of the Commission.    Rule 53, section 1(e) quoted in part above, was promulgated at least twelve and a half years ago.    At no time over that period has the Legislature overruled it, nor so far as I can ascertain, has anyone ever attacked its validity.

The respondents contend that the statute relating to the appointment of court attendants indicates a legislative design to preclude any temporary assignment under *Rule* 53 to act as jail keepers.    In support they rely upon *N. J. S.* 2A:11–32 stating that the Sheriff shall appoint as many court attendants "as may be necessary to attend upon the law division of the superior court and the county court in his county and to perform the duties required to be performed by constables of the respective counties summoned to attend such courts." They argue that the statutory language limits the activities to which they can be assigned, even temporarily, to those duties which historically were performed by constables.    And they say that since traditionally constables were distinguished from jail keepers in duties as well as in name, the Legislature must have intended to perpetuate the distinction and to such an extent as to deprive the Sheriff of any authority to employ their services except in accordance with the ancient rite. Adoption of such a determination would permit anachronism to subvert the legislative design for a modern efficient personnel system.    It ought not to be accepted unless no reasonable basis for a contrary view is to be found in the statute. This is particularly so since everyone concedes that there are

periods of markedly lessened demand in the trial courts for the services of court attendants in the limited sense contended for here.

As has been indicated above, no express mandate for or against temporary transfer of county employees generally is to be found in the subtitle 3, *R. S.* 11:19–1 *et seq*. Absence of such a bar coupled with the obvious purpose of the law to fashion a comprehensive plan for the productive use of employees in the public service, and the bestowal by the Legislature of broad rule-making power to effectuate the plan, reasonably supports the conclusion that implied power of occasional transfer under the supervision of the Commission is authorized. The conclusion of implied general authorization for temporary transfer of county employees on the basis suggested is not overcome or negated, as respondents contend, by the language of *N. J. S.* 2A:11–32 relating to the appointment of court attendants, when considered in the light of other relevant statutes concerning such attendants. True, it directs appointment of as many as may be necessary to attend the superior and county courts and to perform the duties required to be performed by constables summoned to attend such courts. But it does not say such attendants shall not be given any duties other than those described when their services as court attendants in the limited sense contended for are not needed. In fact, the language of the lawmakers viewed against the historical background narrated in the majority opinion is reasonably susceptible of the conclusion that the initiation of *N. J. S.* 2A:11–32 was simply to authorize appointment of a necessary number of persons to attend the courts who would not have to be constables.

The *only* enactment relating to appointment of court attendants is *N. J. S.* 2A:11–32. Acceptance of the definition of "court attendants" in the restricted sense claimed by respondents would create an obvious inconsistency in other pertinent statutes. For example, in all the statutes fixing their pay schedules, the Legislature spoke of the compensation of "court attendants attached or assigned to the

superior court, the county courts, the *juvenile and domestic relations court and to the grand jury and to the various bureaus and departments in the office of the sheriffs of said counties or to such executive or official as may be in charge of such duties, * * *."* (Emphasis added) See *N. J. S.* 2A:11–33, 34, 36. Moreover, there can be no doubt of the Legislature's awareness that court attendants' duties may include custody and handling of prisoners. *N. J. S. A.* 40:11–4 prohibits discrimination against persons over 40 years of age who apply for employment in the service of any county or municipality. The protection does not apply to persons of that age who would be engaged in certain hazardous employments including "court attendants in first and second class counties *whose duties require the custody and handling of prisoners.*" (Emphasis added) As originally adopted, the act did not mention court attendants. *L.* 1930, *c.* 104. Those employed in first class counties were added by amendment in 1938, *L.* 1938, *c.* 336, and in second class counties by 1951 amendment, *L.* 1951, *c.* 62.

It should not escape attention that these various statutes contain no description of the nature of, or of any time limitations on, the custody and handling of prisoners by court attendants. But, assuming that temporary periods were meant, such as while prisoners were being taken by court attendants to and from the county jail for purposes of trial and other court proceedings, during the court proceedings, and while transporting them to various other penal and mental institutions, such fact would aid rather than impair the Sheriff's position in this case. He does not seek the permanent imposition of duties of jail keeper on the court attendants. His position is that these men are accustomed to the frequent, though temporary, custody and handling of prisoners at a time when there is a greater danger to personal safety than when they are confined in cells. Therefore, he contends, it is not unreleated to the court attendants' existing duties to assign them to guard prisoners for little longer periods when necessary during

vacations, sickness and the like of the regular jail keepers. In my opinion, the spirit of the Civil Service legislation and of the various acts relating to court attendants is reasonably compatible with the temporary duty assignment contemplated, and reasonably demonstrates the existence of adequate authority to do so.

It is plain from Rule 53(1)(e) that the power of temporary transfer or assignment cannot be exercised arbitrarily or discriminatorily. In addition to the language set forth above, it provides:

"* * * [N]o employee shall be transferred or assigned as a result of such transfer to a position involving duties for which he is not qualified as indicated by his experience, training and record of service. Any employee who is unwilling to accept a transfer under these provisions shall have reasonable opportunity to be heard in his own behalf."

Thus, a court attendant who is unwilling to accept a temporary assignment to the duties of jail keeper is entitled to be heard by the Sheriff, and the reasons for the unwillingness given consideration compatible with the fair administration of Rule 53. If the objections advanced are not deemed adequate and are overruled, the affected employee, on proper application, should be granted a review of the transfer order by the Civil Service Commission.

Under all the circumstances, therefore, I concur in the view that the Sheriff has the general authority to make a temporary transfer or assignment of court attendants for the purpose contemplated. Whether a particular attendant, or those who are parties to this action, should or may be subjected to such an order over his or their objection, should not be passed upon at this time. Those persons who are unwilling to accept a transfer are entitled to present their objections administratively as prescribed by Rule 53 before the judiciary should intervene.

Accordingly, the judgment of the Appellate Division should be reversed and the cause remanded to the trial

court for the entry of a declaratory judgment in conformity herewith.

Justice HALL concurs in this opinion.

PROCTOR, J. (dissenting). I am in agreement with the views expressed in the opinion of Judge Labrecque for the Appellate Division, 74 *N. J. Super.* 128 (1962). However, in view of the majority and concurring opinions in this court, I think some additional comment is warranted.

The majority recognizes that the duties performed by court attendants are different from those of jail keepers. It is undisputed that court attendants and jail keepers are in the county civil service. *R. S.* 11:21–4 provides that in the county civil service "no person shall be  *  *  *  transferred  *  *  *  in any other manner or by any means other than those prescribed by" the provisions of *subtitle* 3. The only provision relating to transfers under this subtitle is *R. S.* 11:22–8, which has to do with transfers at the employee's own request. This provision is clearly not applicable to the present case. The term "transferred" in *R. S.* 11:21–4 is not qualified in any manner. Nevertheless, the majority and concurring opinions in effect read into it the qualification, "permanent," and infer that there is no implied prohibition against temporary transfers. Upon this premise they base the applicability of Civil Service Rule 53(1)(e) to the temporary transfer of county civil service personnel. To my mind, the unqualified term "transferred" refers to both temporary and permanent changes of position and no rule of the Civil Service Commission can alter the meaning of the statute. See *Abelson's Inc. v. New Jersey State Board of Optometrists,* 5 *N. J.* 412, 425 (1950). According to the majority's view, "transferred" in *R. S.* 11:21–4 is limited to permanent transfers, thus leaving a "statutory void" with respect to temporary transfers, which void is said to be filled by Rule 53(1)(e) of the Civil Service Rules. If there is such a void it is amply filled by *R. S.* 11:22–12, *subtitle* 3, which forbids the assignment of any person "to perform

duties other than those properly pertaining to the position which he legally holds." In view of this latter statute, it seems to me that court attendants cannot be assigned temporarily to perform any duties other than those of a court attendant.

The position of court attendant was created by the Legislature under *N. J. S.* 2A:11-32, which provides:

"The sheriff of each county of this state shall appoint, from the electors of his county, such persons, and as many thereof, as may be necessary to attend upon the law division of the superior court and the county court in his county and to perform the duties required to be performed by constables of the respective counties summoned to attend such courts."

Whenever the Legislature intended to enlarge the duties of court attendants, or to assign court attendants to perform unrelated duties, it has expressly so provided. Thus, *N. J. S.* 2A:154-3 empowers court attendants "to act as officers for the detection, apprehension, arrest and conviction of offenders against the law." *N. J. S.* 2A:11-38 directs the sheriff in counties of the first class to assign one or more court attendants to operate elevators used for the transportation of prisoners. And, *N. J. S.* 2A:11-37 authorizes the assignment judge in a county of the first class, where no librarian has been appointed for the county law library, to designate "a competent court officer, who shall, in addition to his other duties, attend the library," for which service he may be paid additional compensation by the county. Therefore, it seems clear to me that if the Legislature intended that court attendants might be assigned to perform the functions of jail keepers, it would have specifically said so. But, nowhere in our statutes is there any such provision. Indeed, in the 1962 session of the Legislature, *Assembly Bill No. 757*, passed by both houses, would have permitted the sheriff in certain counties, including Bergen County, to assign "civil service employees, whether classified as court attendants, jail keepers or county correction officers interchangeably to duty with the

courts or in the jail or jails as the demands of the sheriff's responsibilities may dictate." However, Governor Hughes vetoed this bill and it did not become law.[1]

---

[1] In his message accompanying the return of the bill without his approval to the Legislature, Governor Hughes said:

"This legislation was developed as a result of the decision in *Caldaro v. Ferber*, 74 *N. J. Super.* 128, decided on May 4th of this year. In this case, the Appellate Division of the Superior Court ruled that existing statutes did not permit the Sheriff of Bergen County to employ court attendants and county jail personnel on an interchangeable basis. In so ruling, the Court discussed the differences between these positions:

'That the duties of court attendants differ substantially from those of jail keepers, appears clear. Generally, court attendants are present for the purpose of preserving order in the court, taking charge of the jury, and other work incidental to the trial of cases. By usage, their duties are said to be well defined and generally known and understood. *Sawyer v. Camden County*, 122 *N. J. L.* 119, 122 (*E. & A.* 1939). Their hours of work are fixed by the sheriff, they being akin to a normal working day when courts are in session. In the case *sub judice* the manual promulgated by defendant, which sets forth the rules and regulations governing court attendants, provides that the regular hours of service shall be from 9 A. M. to 4 P. M. from Monday to Friday, inclusive, and from 9 A. M. to 12 noon on Saturday. It also provides that no court attendant shall leave the court house without securing permission from his superior officer. The latter regulation is in recognition of the ministerial function performed by constables attending upon the courts. *Cox v. Passaic Common Pleas*, *supra*, at *p.* 329.

By contrast, a jail keeper has been defined in the Civil Service specifications as one who: "Under direction, during an assigned tour or duty, guards inmates and assists them toward rehabilitation; does related work as required." According to a manual prepared for the use of jail keepers by defendant, they are required to work in three shifts, which encompass a period of 24 hours a day. * * *

The office of jail keeper was one well-known to the common law. *Bownes v. Meehan*, 45 *N. J. L.* 189, 193 (*Sup. Ct.* 1883). No case has been called to our attention in which the duties of court attendant and jail keeper were regarded as equivalent. On the contrary, the positions have been separately referred to in a number of legislative enactments.'

I believe that this description by the Court adequately explains the reasons for my disapproving this legislation. It would be clearly inequitable to compel an employee who was hired to perform the duties of a particular position, for which position he was required to meet certain standards, to perform responsibilities totally unlike

I would affirm the judgment of the Appellate Division.
FRANCIS and HALL, JJ., concurring in result.

*For reversal and remandment*—Justices JACOBS, FRANCIS,
HALL, SCHETTINO and HANEMAN—5.

*For affirmance* — Justice PROCTOR—1.

those for which he was hired and for which he might have neither the
aptitude nor the qualifications. If it is necessary for county govern-
ment to employ personnel to carry out the functions of court attend-
ant and county jail personnel, then a position providing for such
employment should be established with entrance and training require-
ments that would qualify the holder of such a position to carry out
his duties in a competent and responsible manner."