151 N.J. Super. 242 (1977)
376 A.2d 971
IN THE MATTER OF THE APPEAL OF PHILIP LEMBO.
Superior Court of New Jersey, Appellate Division.
Submitted June 13, 1977.
Decided June 30, 1977.
*243 Before Judges FRITZ, ARD and PRESSLER.
Mr. Martin Verp, County Counsel, attorney for appellant Board of Chosen Freeholders of Passaic County (Mr. John G. Thevos, Special Assistant County Counsel, on the brief).
Messrs. Segreto & Segreto, attorneys for respondent Philip Lembo (Mr. James V. Segreto, of counsel and on the brief).
*244 Mr. William F. Hyland, Attorney General of New Jersey, attorney for Civil Service Commission (Mr. Paul E. Graham, Deputy Attorney General, of counsel and on the statement in lieu of brief).
The opinion of the court was delivered by PRESSLER, J.A.D.
Passaic County appeals from an order of the Civil Service Commission reinstating with back pay its employee, Philip Lembo, whom it had removed for cause following a departmental hearing. The charge underlying the removal was his refusal to accept a temporary transfer to a position in a class different from that to which he was permanently assigned. The dispositive question raised by this appeal is whether or not the applicable provisions of the Civil Service Act and their implementing rules and regulations permit an employer to make such a transfer under any circumstances.
The factual background of this controversy is substantially undisputed. Passaic County, having opted by referendum to adopt the Civil Service Act, N.J.S.A. 11:1-1 et seq., is subject to subtitle 3 of Title 11, applicable to counties, municipalities and school districts (local service). Lembo had been employed by the county since 1969 as one of 10 bridge and highway construction inspectors in the Department of Public Works, of which Gaetano Farina, the county engineer, had been director since May 1973. That employment was a permanent position in the classified service. At the time Farina took over the Department there was and continued to be insufficient work for all these employees in that title, and rather than adhering to the former practice of keeping them available but unoccupied, he assigned them to "out-of-title" inspection work  "catch basin inspection and debris inspection, things of that nature." As he further testified at the Civil Service Commission hearing, "We have tried to keep these people busy. Prior to that he and the rest of them were sitting around reading newspapers * * *."
*245 The controversy here involved occurred in September 1975 as a result of the unexpected cancellation of its contract by the independent commercial firm which had been retained by the county to regularly clean and maintain the county courthouse. Although the county did employ building maintenance workers whose job title included the necessary cleaning and maintenance chores, those employees were already engaged in maintenance of the heating and electrical systems. Because of the emergency created by the contract cancellation, the freeholders instructed Farina to assign all available men in his Department to a temporary courthouse cleaning detail until alternate permanent cleaning arrangements could be made. He so assigned Lembo, among others. Lembo's initial reason for refusing the assignment was that the required hours, 3:30 to 10:30 P.M., would interfere with his bowling schedule. He thereafter refused the assignment in writing on the ground that he could not be compelled to perform "out-of-title" duties. The county then initiated the disciplinary action against Lembo which resulted in the removal and his consequent appeal therefrom to the Civil Service Commission, which ordered his reinstatement on the ground that the county was indeed without the power to make the temporary transfer. The county appeals from that order.
At the outset, it is clear that a public employer subject to the Civil Service Act is obliged to deal with its employees in a manner consistent with the applicable statutory provisions and their implementing rules. N.J.S.A. 11:19-3. That obligation extends, of course, to the matter of transfers of employees. Caldaro v. Ferber, 39 N.J. 314 (1963); Bergen Cty. v. Civil Service Dept., 115 N.J. Super. 90 (App. Div. 1971). The only provision of subtitle 3 of Title 11 (local service) dealing with transfers of permanent employees in the classified service is N.J.S.A. 11:22-8, which provides in full as follows:
A person holding an office or position in the classified service may, on his own request and with the consent of the commission, be transferred *246 to a similar office or position in another office, department or institution No transfer shall be made from an office or position in one class to that of another class nor to an office or position for original entrance to which there is required by this subtitle, or the rules adopted pursuant thereto, an examination involving essential tests or qualifications different from or higher than those required for original entrance to an office or position held by such person.
The correlative provision of subtitle 2 of Title 11, applicable to the state service, namely, N.J.S.A. 11:11-3, reads as follows:
The chief examiner and secretary shall provide by rule, approved by the commission, for the transfer of employees from a position in a given class to another in the same or different department, commission, board, institution or agency, and for the periodical or occasional transfer of employees for a period not to exceed six months, without regard to class or department, commission, board, institution or agency, in order to better the distribution of persons in the service or effect economies, or make available from one or more central supply pools extra stenographic, clerical, messenger or other service needed for short periods, or provide training sought by employees or required by appointing authorities. No transfer shall be made without the approval and consent of the appointing authorities from or to whose departmental working forces the transfer is proposed.
For present purposes at least, the key word in both provisions is "class," defined by N.J.S.A. 11:3-1 as
* * * a group of positions in the classified service, established under this subtitle sufficiently similar in respect to the duties, responsibilities and authority thereof, that the same title may be used to designate each position allocated to the class, that the same requirements as to education, experience, capacity, knowledge, proficiency, ability and other qualifications should be required of the incumbents, that the same tests of fitness may be used to choose qualified employees, and that the same schedule of compensation can be made to apply with equity.
There is no dispute here of the fact that the jobs of bridge and building inspector and building maintenance worker are by this definition in different classes.
The differences between the state and local service transfer provisions are immediately apparent. While both *247 prohibit a permanent transfer from one class to another, N.J.S.A. 11:11-3 expressly permits an interclass temporary transfer for a period not to exceed six months for the reasons therein stated. N.J.S.A. 11:22-8, the local service provision, is altogether silent as to temporary transfers, whether within or without the same class. That silence has, however, been construed as not implicitly prohibiting such transfers but rather as constituting a legislative delegation to the Civil Service Commission of the authority to determine by rule promulgation the questions of whether at all and if so, in what circumstances and pursuant to what procedures, temporary transfers would be permissible. As the Supreme Court said in Caldaro v. Ferber, supra:
We find no reference to temporary transfers under subtitle 3, and likewise no implied prohibition against such transfers. Thus, the language of that section must be read in light of the Commission's rule-making power as incorporating within the term "transfer" as used therein other transfers prescribed by Commission rules not inconsistent with R.S. 11:22-8. [39 N.J. at 321]
The power of the employer, therefore, to temporarily transfer employees is dependent upon and coextensive with rule authorization. That is the express holding of Caldaro v. Ferber, supra.
The rules of the Civil Service Commission have been extensively restructured and revised as a result of the adoption of the Administrative Procedure Act, N.J.S.A. 52: 14B-1 et seq. The substantive changes in the rules regarding transfers have been dramatic. At the time Caldaro was decided transfers were governed by Rule 53 (1), described by Caldaro as encompassing "just about every conceivable transfer situation  from transfers in the same class through transfers to another class" (39 N.J. at 321) and expressly permitting, subject to detailed procedural and *248 substantive safeguards,[1] "temporary transfers from one class to another." 39 N.J. at 322. The transfer provisions of N.J.A.C. 4:1-1.1 et seq., adopted after Caldaro was decided, are, however, far less embracive. The definition of "transfer", whether permanent or temporary, is stated as a "change of an employee from one position to another in the same class in another organization unit." The only definitional distinction lies in the duration of the change, a transfer being regarded as temporary if made for a period not exceeding six months. N.J.A.C. 4:1-2.1.
There is, moreover, nothing in subchapter 15 of the Civil Service Commission's rules dealing with assignments and transfers (N.J.A.C. 4:1-15.1 to 15.7, inclusive) which appears to contradict what seems to be the clearly expressed intent of the definitional section that any interclass movement of employees is prohibited. Thus, N.J.A.C. 4:1-15.1, 4:1-15.2 and 4:1-15.7, providing respectively for permanent transfer, lateral title change and assignment or reassignment, all specifically limit these personnel actions to changes of positions which are in the same class. While N.J.A.C. 4:1-15.3, addressed to temporary transfers, does not contain that express limitation, we are nevertheless persuaded that it is necessarily implied therein. First, the import of N.J.A.C. 4:1-15.3 is to state the circumstances justifying a temporary transfer. It provides in full as follows:
A temporary transfer may be made in order to provide a better distribution of employees in the service or to effect economies, or to make available a service needed for short periods, or to provide training sought by employees or required by the appointing authorities or for any purpose which is for the good of the service as approved by the Chief Examiner and Secretary. Such transfer may not exceed a period of six months.
*249 It is evident that this statement virtually reiterates the language of N.J.S.A. 11:11-3 in respect of permissible reasons for temporary transfers but omits the "without regard to class" stipulation of the statute. We cannot but regard that omission as purposeful, particularly in view of the complete revision of the rule following Caldaro. The fact that the present rule not only omits an express interclass temporary transfer power but also omits all of the detailed restrictions on the exercise of such power which are set forth in the original rule is persuasive of the conclusion that the substantive change of elimination of that power altogether was intended by the adoption of the present rule. Cf., Essex Cty. Retail, etc., v. Newark, etc., Bev. Control, 77 N.J. Super. 70, 78-79 (App. Div. 1962). Furthermore, as the Civil Service Commission's decision here appealed from makes clear, it itself construes N.J.A.C. 4: 1-15.3 as limited to intraclass transfers. We accord, of course, substantial deference to the contemporaneous rule construction by the agency charged with administration of a statute and the promulgation of implementing rules. See, e.g., In re Application of Saddle River, 71 N.J. 14, 24 (1976); Service Armament Co. v. Hyland, 70 N.J. 550, 561 (1976). Finally, as we have already noted, the limitation of temporary transfers to positions of the same class is express in the definitional section.
We see no alternative to acceding to the force of the syllogistic logic implied by this analysis. The extent of the power of a local service employer to effect out-of-class temporary transfers is dependent on rule authorization. The rules do not authorize any out-of-class temporary transfer. Therefore, the local service employer has no power to effect any such transfer.[2]
*250 We recognize that preclusion of an interclass temporary transfer power may in particular instances impede achievement of the overriding policy of the Civil Service Act to provide efficient and economic public service. It may also in particular instances impede the effectuation of the specific purposes intended by a temporary transfer, namely, for a limited duration to provide a better distribution of employees or to effect economies, or to make available a service needed for a short period. However, we also recognize that interclass temporary transfer is a power which may be subject to substantial abuse and that the potential for abuse may be greater in the local service than in the state service. We cannot but acknowledge that the morale of employees and their protection from possible harassment techniques are important ingredients of an economic and efficient service. We therefore must also acknowledge that the Commission's evident conclusion that on balance the public is better served by withholding an interclass temporary transfer power is a determination entirely within its prerogative  at least until such time as the Legislature may speak to the contrary. We may deplore what some, at least, would regard as the regrettable lack of commitment to the work ethic typified by the facts in this case. We may equally deplore the toleration by a public employer of a superfluous work force and its unwillingness to incur the consequences of attempting to eliminate the inefficiency and waste of public resources therein involved. But these are symptoms *251 of a general social and political malaise, the remedy for which is the primary responsibility of the body politic and not of the courts.
Affirmed.
NOTES
[1] For example, Rule 53 prohibited any transfer of a person not within the age limits or physical experience or training requirements for the position to which he was to be transferred or when the duties of that position required tests or qualifications essentially different or higher than those applicable to the position regularly held.
[2] We do not here consider, because not here raised and not here dispositive, the question in respect of the state service of a rule prohibiting temporary transfer from class to class. We do note, however, that while such a rule might be facially inconsistent with N.J.S.A. 11:11-3, nevertheless N.J.S.A. 11:11-3 is itself dependent on implementing rules. Furthermore, since a single set of transfer rules applies to both the state service and the local service, invalidity of those rules in respect of the state service would not change the result here. Were they to be deemed invalid as to the state service in this regard, the alternatives would be either to construe them as implying an inter-class temporary transfer power for the state service only or as declaring them invalid altogether. In the latter case there would be consequently no viable temporary transfer rule at all and hence no temporary transfer power at all applicable to the local service.