SHERMAN FINE, INDIVIDUALLY AND AS A GENERAL PART-
NER IN F & W ASSOCIATES, A PARTNERSHIP, PLAINTIFF,
v. GALLOWAY TOWNSHIP COMMITTEE, GALLOWAY TOWN-
SHIP PLANNING BOARD, JOHN ADE, GALLOWAY TOWN-
SHIP BUILDING INSPECTOR, DEFENDANT.

Superior Court of New Jersey
Law Division Atlantic County

Decided May 25, 1983.

---

[6]Unjust enrichment is not defined in the *Restatement* (See Comment C, to *Restatement* § 1, and Comment H to T.D. # 1 of *Restatement* 2d § 1, *supra* ) but is generally understood as not being limited to cases fault, mistake or voluntary activity. However, as is noted in the *Restatement of Restitution* § 179, and Comment A thereto, the right to restitution may be terminated, as here, by the plaintiff's laches.

434

436

*Nelson C. Johnson* for plaintiff (*Bertman, Johnson & Sahli,* attorneys).

*Daryl Todd* for defendant, Galloway Township Planning Board (*Previti, Todd, Gemmel & Fitzgerald,* attorneys).

*Ronald I. Bloom* for defendant, Township of Galloway, et als. (*Vasser, Spitalnick, Bloom, Mazin & Stein,* attorneys).

CONNOR, J.S.C.

This complaint in lieu of prerogative writs presents the question of whether a property owner in an uncertified Pinelands municipality must submit to a formal site plan review by the municipality after he has obtained development approval from

the Pinelands Planning Commission. This court feels that the appropriate answer is a qualified yes. The question is one of first impression and requires this court to interpret provisions of the Pinelands Protection Act, *N.J.S.A.* 13:18A–1 *et seq.*, effective June 28, 1979 and its implementing regulation, the Pinelands Comprehensive Management Plan, *N.J.A.C.* 7:50–1.1 *et seq.*

Plaintiff is the owner of a 10.3 acre tract of land located in Galloway Tp., which is an uncertified municipality under the Act and Management Plan. On November 30, 1981 plaintiff obtained from defendant, Galloway Tp. a mercantile license permitting plaintiff to use his property for a flea market and farmers market. Thereafter, plaintiff was advised by the township zoning officer that he was required to obtain Township Planning Board approval before he could commence his business. The zoning officer also advised plaintiff that the Planning Board would not entertain plaintiff's application unless approval was first granted by the Pinelands Planning Commission. On April 23, 1982 plaintiff was granted conditional Pinelands Development Approval. On August 16, 1982 plaintiff made application to the township zoning officer for a building permit seeking permission to proceed with the improvements necessary to conduct his proposed flea market and farmers market. This request was denied by the zoning officer citing the need for approval from defendant, Galloway Township Planning Board.

Plaintiff then instituted the present suit for an order pursuant to the Declaratory Judgment Act, *N.J.S.A.* 2A:16–50, *et seq.* declaring that:

1. Plaintiff is not required to submit to the site plan review process of the Galloway Township Planning Board, and

2. Plaintiff is legally entitled to the immediate issuance of a building permit for the improvements necessary for his project.

The statutory and regulatory references relied upon by plaintiff are *N.J.S.A.* 13:18A–12(c) and (d), *N.J.A.C.* 7:50–3.37 and *N.J.A.C.* 7:50–4.13.

*N.J.S.A.* 13:18A–12(c) and (d) provide:

c. In the event that any county or municipality fails to adopt or enforce an approved revised master plan or implementing land use ordinances, as the case may be, including any condition thereto imposed by the commission, the commission shall adopt and enforce such rules and regulations as may be necessary to implement the minimum standards contained in the comprehensive management plan as applicable to any such county or municipality.

d. Any approval of any application for development granted by any municipality, county, or agency thereof in violation of the provisions of this section shall be null and void and of no force and effect at law or equity.  L.1979, c. 111, § 11, eff. June 28, 1979.

Pursuant to the authority of *N.J.S.A.* 13:18A–12(c) the Pinelands Planning Commission adopted the following regulations for development in an uncertified municipality:

7:50–3.37 *Effect of municipality's failure to obtain Commission certification of master plan and land use ordinances*

In the preservation area, and after one year from the effective date of this Plan, in the Pinelands Area no person shall carry out any development in an uncertified municipality unless such development has been approved by the Commission pursuant to *N.J.A.C.* 7:50–4, Part II.  A Pinelands development approval shall supersede any local decision if a municipality has not received certification of its master plan and land use ordinances.

7:50–4.13 *Pinelands Development Approval required for development in uncertified areas*

Subject to the provisions of *N.J.A.C.* 7:50–4.12 no person shall carry out any development in any portion of the Pinelands Area located within the jurisdiction of a municipality with an uncertified master plan or land use ordinance without first obtaining Pinelands Development Approval from the Commission pursuant to the procedures set out in this Part.

Plaintiff claims that pursuant to these provisions, especially the last sentence of *N.J.A.C.* 7:50–3.37, he is not required to appear before the municipal planning board for site plan approval having already obtained approval from the Pinelands Planning Commission.  Presumably, plaintiff is asking this court to render a literal reading of the last sentence in *N.J.A.C.* 7:50–3.37 and hold that all municipal review of a development proposal in an uncertified municipality is precluded once prior approval has been obtained from the Pinelands Planning Commission.  For this court to so hold, however, would require me to ignore the primary objective of statutory construction: the search for legislative intent.

At the outset this court notes that rules and regulations of an administrative agency are subject to the same canons of construction as is a Statute. *Essex County Welfare Board v. Klein,* 149 *N.J.Super.* 241, 247 (App.Div.1977), *In re Pont Murray Dairy Co.,* 6 *N.J.Super.* 285, 300 (App.Div.1950). Legislative intent is to be perceived from the whole statute and all parts of the statute must be read so that they are in alignment with the intent of the entire act. See, *Singleton v. Consolidated Freightways Corp.,* 64 *N.J.* 357, 362 (1974); *Seatrain Lines, Inc. v. Medina,* 39 *N.J.* 222 at 226–227 (1963). Words alone do not control. *Loboda v. Clark Township,* 40 *N.J.* 424, 435 (1963).

The goal of both the Pinelands Protection Act and the Comprehensive Management Plan is to promote orderly development in the Pinelands Region so as to protect, preserve and enhance the significant and unique resources of that region. *N.J.S.A.* 13:18A–9; *N.J.A.C.* 7:50–1.1. In order to ensure the goal certain *minimum* standards were established by the Commission and embodied in the Comprehensive Management Plan. See, *N.J.A.C.* 7:50–2.1 which declares that the provisions of the Plan are the *minimum* standards for the preservation of the Pinelands and *N.J.A.C.* 7:50–4.11 which provides that the purpose of Part II of the Plan, Development in Areas Without Certified Local Plans, is to ensure that all development which is not regulated by certified master plans and land use ordinances is planned and constructed in conformance with the minimum standards of the Plan.

I find nothing in either the act or the Plan which prevents a municipality from adopting and enforcing more restrictive standards than those set forth in Subchapters 5 and 6 of the Plan. To the contrary, the Comprehensive Management Plan is replete with deference to local bodies to refine or enact more restrictive standards, provided their action is consistent with the policies and objectives of the Plan. The introductory statements

to both subchapters 5 and 6 support this position and are quoted, therefore, in full.

Subchapter 5:

## INTRODUCTION

The Pinelands Protection Act provides in part that the Comprehensive Management Plan is to "encourage appropriate patterns of compatible residential, commercial and industrial development in or adjacent to areas already utilized for such purposes, in order to accommodate regional growth influences in an orderly way while protecting the Pinelands environment from the individual and cumulative adverse impacts thereof" and to "discourage piecemeal and scattered development" while protecting the Pinelands environment. Subchapter 5 contains minimum standards for the development and use of land which the Pinelands Commission has determined are necessary to protect and maintain the essential character of the Pinelands environment and to accomplish the purposes of the Pineland Protection Act and the Federal Act.

The provisions of this subchapter are intended to serve as *minimum* standards for the preparation and adoption of county and municipal master plans and land use ordinances. *However, it is recognized that the specific provisions of this subchapter, including the management area delineations, can be refined at the local level provided that the objectives and goals the minimum standards represent will be achieved.* In determining whether to certify a municipal master plan or land use ordinance under the provisions of *N.J.A.C.* 50–3, Part IV of this Plan, the Pinelands Commission will consider the extent to which the municipal master plan or land use ordinance ensures that all development of land will be in conformance with the minimum standards of this subchapter. (Emphasis added).

## Subchapter 6:

## INTRODUCTION

This subchapter establishes management programs and *minimum* standards governing development and land use in the Pinelands. In addition, guidelines for county and municipal preparation of management programs for scenic, energy conservation and recreation are provided. All the programs are intended to be implemented by the administration of municipal and county master plans and land use ordinances through the development review procedures established in *N.J.A.C.* 7:50–4. Prior to certification of county or municipal master plans and land use ordinances, the standards and guidelines of these programs will be implemented and enforced by the Pinelands Commission. *The standards set forth in this subchapter are minimum requirements and a municipality or county may adopt more restrictive regulations, provided that such regulations are compatible with the goals and objectives of this Plan.* (Emphasis added.)

I am satisfied that the Legislature did not intend to withdraw all local review whether the municipality is located in a certified or uncertified region. Statutory construction should not turn on literalisms or technisms. *Jersey City Chapter Prop. Owner's, etc., Assoc. v. City Council,* 55 *N.J.* 86, 100 (1969). Instead a court should consider the "breadth of the objectives of the legislation and the commonsense of the situation." *Id.* The most practical interpretation to be given the last sentence in *N.J.A.C.* 7:50–3.37 is that Pinelands approval will supersede a local decision only if the local decision is inconsistent with the standards and goals of the Plan.

I find nothing that would preclude a municipality from requiring compliance with its own local land use ordinances, in addition to compliance with the minimum standards of the Plan, provided the ordinance does not conflict with the plan or regulate a matter controlled by the Plan.

Moreover, the July 21, 1978 letter of interpretation rendered by the Assistant Director of the Pinelands Commission supports this conclusion. I must accord, of course, substantial deference to the contemporaneous rule construction by the agency charged with the administration of the statute and its implementing rules, *Matter of Lembo,* 151 *N.J.Super.* 242 (App.Div. 1977), especially "when the case involves the construction of a new statute by its implementing agency." *New Jersey Guild of Hearing Aid Dispensers v. Long,* 75 *N.J.* 544, 575 (1978) quoting *Nat'l Resources Defense Council, Inc. v. Train,* 510 *F.2d* 692, 706 (D.C.Cir.1975).

The question posed by plaintiff in his request for the letter of interpretation pursuant to *N.J.A.C.* 7:50–4.63 was the same as the issue now before the court; whether a site plan approval for the project from the local planning board was unnecessary and a legal nullity under both the Pinelands Protection Act and the Comprehensive Management Plan. The Assistant Director concluded that:

"... the requirements of the Pinelands Protection Act and the Comprehensive Management Plan do not preclude all municipal review of a proposed development which has received a Pinelands Development Approval,".... "Galloway Tp. may review and take action on proposed development under the provisions of its existing land use ordinances only to the extent that those ordinances relate to matters not regulated by the Comprehensive Management Plan."

In reaching this conclusion the Assistant Director noted that the Comprehensive Management Plan does not regulate all matters normally regulated by municipal land use ordinances. Certain matters, such as parking regulations, traffic regulations or lighting conditions were recognized as peculiarly local in nature and left to the discretion of the individual municipality. Thus, the Assistant Director stated that Galloway Township could impose conditions related to matters within its land use ordinances which were not regulated by the Plan provided those conditions were consistent with the conditions imposed by the Pinelands Commission in its development Approval. More pertinently, the letter of interpretation stated:

A municipality may even deny an application for development which does not meet the requirement of its land use ordinances which deal with matters not regulated by the Comprehensive Management Plan. However, Galloway Tp. may not deny the proposed development based on requirements in its land use ordinance which are also regulated by the Comprehensive Management Plan. To allow such a denial would allow a local decision to supersede the Pinelands Development Approval.

I hold, therefore, that Galloway Tp. has jurisdiction to review the proposed development given the above statutory and regulatory framework. Plaintiff must submit his application to the local planning board which may review and take action on the proposal only to the extent that it acts in conformance with the minimum standards and goals of the Plan and does not render a decision inconsistent with the Commission on a matter regulated by the plan.

While I find the above ruling sufficient to dispose of this matter I feel compelled to comment on an underlying issue; that is, the preemption doctrine. Plaintiff did not explicitly raise this issue in his brief, however, it was intimated by

plaintiff's contention that local review was displaced by the statutory and regulatory provisions previously quoted.

Home rule is a firmly embedded doctrine in our government. It embodies the principle that the police power of the State may be invested in local government to enable local government to discharge its role as an agency of the State and to devise measures tailored to the local community. *Iganamort, et al. v. Bor. of Fort Lee, et al.,* 62 *N.J.* 521, 528 (1973) aff'd 72 *N.J.* 412 (1977). This local power, however, is not unbridled. A municipality may not contradict a policy established by the Legislature, *Auto-Rite Supply Co. v. Mayor and Tp. Committeemen of Woodbridge,* 25 *N.J.* 188 (1957), nor may it act if the Legislature has preempted the field. *Summer v. Teaneck,* 53 *N.J.* 548, 554–555 (1969).

As my above analysis indicates I am satisfied that the Legislature did not intend to preclude all municipal review of a development proposal. I am also satisfied that the Legislature did not intend to commit all facets of development regulation and land use to the Pinelands Planning Commission. While the statutory scheme of the Pinelands Protection Act is comprehensive I have found, as supported by the Commission's letter of interpretation, that the Legislature desired to leave to the municipalities certain responsibilities over the area of land use and development.

The State Constitution expressly permits the Legislature to delegate to municipalities the responsibility for regulating local land use by means of zoning schemes. *N.J. Const.* (1947), Art. IV, § 6, par. 2. The Legislature did so through the enactment of the Municipal Land Use Law. *N.J.S.A.* 40:55D–1, *et seq. N.J.S.A.* 40:55D–37 expressly permits a governing body to require planning board approval for any subdivision or site plan proposal. The Municipal Land Use Law is intended to encourage development in a manner which will promote the public health, safety, morals and general welfare. *N.J.S.A.* 40:55D–2; *Levin v. Parsippany-Troy Hills, Tp.,* 82 *N.J.* 174, 179

(1980). The act is concerned with, among other things, population densities, recreational use, transportation routes and aesthetic zoning. *N.J.S.A.* 40:55D–2. The Pinelands Protection Act is designed to preserve the continued viability of lands located in the Pinelands region and to protect the unique natural, ecological, agricultural and horticultural resources found in the region. *N.J.S.A.* 13:18A–19.

I conclude that the Legislature has not foreclosed municipal exercise of the delegated power either by totally preempting the field or by declaring an inconsistent policy. To require a developer to comply with certain local zoning regulations pertaining to land use and development and also to comply with development and use regulations designed to protect unique resources in the Pinelands Region is appropriate under the circumstances here presented.