STATE OF NEW JERSEY v. JOHN R. LONGO.

Argued May 20, 1947—Decided September 12, 1947.

For the respondent. William George. *George P. Moser*.

For the appellant, John R. Longo, *Raymond Chasan*.

For the State of New Jersey, *Horace K. Roberson*, Prosecutor of the Pleas in and for the County of Hudson.

The opinion of the court was delivered by

CASE, CHIEF JUSTICE. The papers carry the title "William George, Prosecutor-Respondent, vs. August Ziegener, Judge of the Hudson County Quarter Sessions, and John R. Longo, Defendants." They have to do with the criminal case of *State* v. *Longo,* 133 *N. J. L.* 301, and should be entitled in that cause, *Curtis* v. *Joyce,* 90 *Id.* 47; *affirmed,* 91 *Id.* 685; *State* v. *Stevens,* 133 *Id.* 488. The appeal is from a judgment of the Supreme Court, *sub nomine George* v. *Ziegener,* 135 *Id.* 86, setting aside an order of the Hudson County Quarter Sessions which granted a new trial on the indictment for altering a public record upon the ground that the conviction had been the result of fraud.

The finding of fraud arose out of the following circumstance: William George, then assistant to the Prosecutor of the Pleas for the County of Hudson, had prosecuted the indictment to conviction. At the trial he placed upon the witness stand J. Owen Grundy, a co-defendant who had plead guilty and who gave the highly material testimony that he had altered the record in question at the request and in the presence of defendant Longo. Grundy had previously testified before the grand jury to a diametrically opposite state of facts. Mr. George had full knowledge of that circumstance but did not inform either the court or the jury of it; an omission which, in the opinion of the Court of Quarter Sessions, was aggravated in that Longo was not represented by counsel at the trial, did not participate therein and had no legal protection other than that of the court and such as the state owed him. The court found that Grundy had committed perjury either before the grand jury or at the trial of the indictment and that Mr. George's failure to disclose the fact constituted a deliberate fraud upon the court and jury, as a result of which Longo was deprived not only of a fair trial but of a legal one. Thereupon the Sessions made the order for a new trial. We reserve decision on the merits of the order, although we note, as against respondent's contention that the court lacked jurisdiction because of lapse of time, that there is respectable judicial authority for the contention that a new trial may be granted on grounds of fraud

even after the expiration of the term in which the final judgment was regularly perfected. *State* v. *Tolla,* 73 *N. J. L.* 249; *Partlow* v. *State* (*Ind.*), 144 *N. E. Rep.* 661; *City of Chicago* v. *Nodeck* (*Ill.*), 67 *Id.* 39. Respondent, in a supplement to his brief, directs attention to the recent decision by the United States Supreme Court in *United States* v. *William F. Smith,* 331 *U. S.* 469, as against that proposition; but he passes over the following notation in Footnote No. 4: "Of course, the federal courts have power to investigate whether a judgment was obtained by fraud and make whatever modification is necessary, at any time. *Universal Oil Products Co.* v. *Root Refining Co.,* 328 *U. S.* 575; 90 *L. Ed.* 1447; 66 *S. Ct.* 1176."

George, together with his superior, the Prosecutor of the Pleas, was out of office at the time of the proceedings relating to a new trial. Because the office of County Prosecutor was vacant, the Attorney-General of the state, with the aid of his assistants, had taken over the duties of the Prosecutor and he, in person, appeared for the state at the hearing on the application for a new trial. At his invitation Mr. George was present as a witness and testified at length. After the Sessions had acted, George, as a resident and taxpayer of Hudson County, applied to the Supreme Court for a writ of *certiorari* to review the order. The Supreme Court, 134 *N. J. L.* 347, allowed the writ in an opinion wherein it said:

"The status of Mr. George as a resident and taxpayer of Hudson County is sufficient to warrant this application by him. Furthermore, the importance of the question involved is such as, in the opinion of the court, to warrant the issuance of the writ on its own motion.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"The writ of *certiorari* is allowed with leave to both parties to take depositions on five days' notice."

George had no standing as a resident, a taxpayer or otherwise to seek a writ of *certiorari* to review a finding for or against another in a proceeding under an indictment. He was not a party to the action and he did not represent a party. However hurtful a court opinion may be to an individual concerning whom it is expressed, *certiorari* will not

lie to revise or correct that opinion; an order, judgment or
determination affecting the rights of the applicant for a writ
of *certiorari* is necessary as a foundation for the use of the
writ. *Clay* v. *Civil Service Commission*, 89 *N. J. L.* 194;
*Watson* v. *Medical Society of New Jersey*, 38 *Id.* 377; *Newark*
v. *Fordyce*, 88 *Id.* 440; *Morgan* v. *Burnett*, 121 *Id.* 352;
*Vesey* v. *Driscoll*, 132 *Id.* 293, 297; *Garden State Racing
Association* v. *New Jersey Racing Commission*, 134 *Id.* 391.
There is nothing in the order which names, refers to or hurts
Mr. George. It would be confusing and oppressive if a
defendant under an indictment had not only to resist the
state as his prosecutor, but also any resident and taxpayer
who chose to enter the controversy. Respondent cites *contra*
the following cases: *Ferry* v. *Williams*, 41 *Id.* 332, wherein
a writ went to allow an inspection of papers, public documents, in the hands of the collector of taxes; *Wilson* v. *Jersey
City*, 107 *Atl. Rep.* 797 (not officially reported, reversed on
unrelated grounds, 94 *N. J. L.* 119), to test the validity of
a liquor license; *O'Brien* v. *Public Utility Board*, 92 *Id.* 44,
to review a board ruling increasing passenger rates on a street
railway; *Biddle* v. *Riverton*, 58 *N. J. L.* 289, to review a
municipal ordinance regarding the issue of bonds and the
proceedings had thereunder. The citations clearly are not
in point.

The Attorney-General and the several Prosecutors of the
Pleas are constitutional officers (article 7, section 2, paragraph 3). Their duties are not defined by the constitution but
are left, by necessary implication, for definition by the legislature. *Public Utility Commissioners* v. *Lehigh Valley Railroad Co.*, 106 *N. J. L.* 411; *O'Reardon* v. *Wilson*, 4 *N. J.
Mis. R.* 1008, 1011. A prosecutor of the pleas is empowered
by statute (*R. S.* 2:182–1), except as otherwise provided by
law, to prosecute the pleas of the state in his county and to
do and perform such acts and things in behalf of the state
in and about such prosecution as were formerly done and
performed by the Attorney-General; and (*R. S.* 2:182–4)
*"the criminal business* of the state shall be prosecuted *exclusively* by the prosecutors of the pleas, except in counties
where, for the time being, there may be no prosecutor, or

where the prosecutor desires the aid of the attorney-general or as otherwise provided by law." The Attorney-General, among his other duties, is empowered (*R. S.* 52:17A–4f, chapter 20, *Pamph. L.* 1944) to prosecute the criminal business of the state in a county having no prosecutor or render aid in a prosecution at the request of the prosecutor and may be called upon by a Justice of the Supreme Court to prosecute the criminal business of the state therein, and to represent the state in proceedings on error in criminal cases in the Supreme Court and the Court of Errors and Appeals, and (*R. S.* 52:17A–5) in functioning in a county shall have *all the power and authority of the prosecutor including the representing of the state in all proceedings in criminal cases,* on error or otherwise, in the Supreme Court and the Court of Errors and Appeals. In *State* v. *New Jersey Jockey Club,* 52 *N. J. L.* 493, it is said that even as between the Prosecutor of the Pleas and the Attorney-General "We are of the opinion that the right to apply for the writ (viz., of *certiorari* to remove an indictment) is the right of the prosecutor, and not of the attorney general"—language which was interpreted by the Court of Errors and Appeals in *Board of Public Utility Commissioners* v. *Lehigh Valley Railroad Co.,* 106 *N. J. L.* 411, 417, as being a holding that "the right to apply for *certiorari* of an indictment on the part of the state was exclusively that of the prosecutor of the pleas." A Justice of the Supreme Court may, under the statute, override the power of a county prosecutor by requesting the presence of the Attorney-General, and that procedure is sometimes pursued; but we know of no statutory provision, other than that, whereby the court may supplant the appointed public officials.

Thus, by statute, a county prosecutor is, within his county, the person who is to do such acts and things in behalf of the state as were formerly done by the Attorney-General; and specifically he, exclusively, shall prosecute the criminal business of the state except in those instances where the Attorney-General is called upon to act and in such instances the Attorney-General, because he is given *all* the power and authority of the prosecutor, including the representing of the state in all proceedings in criminal cases, on error or other-

wise, in the Supreme Court and the Court of Errors and Appeals, has the exclusive authority so to act.

It is not open to question that what we are now concerned with is criminal business. The statute, in so far as it can do so, places the exclusive function of administering that business as we have said. It has full power to do so unless there is conflicting constitutional authority elsewhere.

It is said by counsel for George that the writ of *certiorari* was allowed by the Supreme Court on its own motion and that the Supreme Court has an inherent right even in criminal proceedings under an indictment so to act. No precedent is cited either in the Supreme Court opinion or in the brief of counsel for the contention. There being no statutory authority, the jurisdiction must have its origin in constitutional provision if it is to survive the contrary legislation cited above. The Supreme Court has, constitutionally, the ancient powers of the King's Bench unless the same have been taken away or delegated elsewhere; but we are without supporting authorities on the proposition that the Supreme Court, by reason of succeeding to the jurisdiction of the King's Bench, holds the power of removing or supplanting a Prosecutor of the Pleas or the Attorney-General. And, because of the theory of the English people that enforcement of the criminal laws lay with the Crown, we doubt the existence of any common law jurisdiction in the King's Bench to oust the officers of the Crown by placing the control of criminal business, or any part of it, in a private person. *Vide Black. Com. Book IV, p. 2; Book I, p. 268; Book III, p. 28*—"the King's attorney general;" *State* v. *Zabriskie, 43 N. J. L.* 369; *Public Utility Commissioners* v. *Lehigh Valley Railroad Co., supra.*

Our search of New Jersey cases has disclosed none of nearer approach than *State* v. *Then, 114 N. J. L.* 413. That decision, on the showing of the report, does not give support to the instant procedure. It seems not to have involved a controversy on the propriety of the *allocatur* and did not reach this court. The writ of *certiorari* was prosecuted by a county bar association acting through its committee—a quite different situation. It appears, moreover, to have been the con-

ception of the court that the state was the moving party; as, observe (*p.* 418), "the state is seeking to review the quashing of the indictment. * * * it would appear to be but logical, proper and surely a step in the right direction to allow the writ on the application of the state when, as here, it alleges as a special reason that the indictment was quashed 'capriciously.'" If the state was acting through its designated officers, there is nothing to be said; but we do not accept the inferences of the decision as a holding that the exclusive control of the Prosecutor of the Pleas, or in proper circumstance of the Attorney-General, may be silently suppressed or disregarded and a non-official person, or group of persons, be lightly clothed with the right to transact criminal proceedings in the name of the state.

Nevertheless, the question of what the Supreme Court may do *ex proprio motu* is left open. We find it unnecessary to consider further than has already been expressed whether the broad power of that court over its prerogative writs and criminal procedure leads logically, whether with or without precedent, to that exercise of jurisdiction, for, notwithstanding the expressed opinion of the court that the importance of the dispute would warrant such judicial interposition, we construe the allowance of the writ as being in fact to Mr. George as an applying individual. The movement of the case is inconsistent with any other view. The Supreme Court appointed no friend of the court or other impartial representative of the bench or of the bar or of the interested public to prosecute the writ. It allowed the writ to Mr. George whose acts as assistant prosecutor in the trial of the indictment were under attack and for whose alleged fraud the new trial had been granted. It was he who made the application; it was to him that the writ was awarded; it was in his name that the writ was prosecuted; it was to him and the defendant Longo, as mutually opposed parties, that leave to take depositions was given; it was he who, by counsel, prosecuted the writ in the Supreme Court and defends it here. What the Supreme Court did was to validate the application of a private individual for permission to supersede the Attorney-General, while the latter was functioning, and the new Prose-

cutor of the Pleas after that appointee should be commissioned and established in office, and to wage the fight on behalf of the state against the legality of the order; and this upon no charge or finding against the public officials or upon any order of direct *supersedeas,* but only by allowing a writ of *certiorari* to a private individual upon the reasoning that important questions were involved. We find that the Supreme Court did not have jurisdiction to take, in that manner, the criminal business of the state away from the Prosecutor of the Pleas, or, in his stead, from the Attorney-General, and to place it in the hands of a private citizen. In any event, it was an imprudent exercise of discretion to award the writ to one whose acts as a public officer had been adjudged fraudulent and constituted the nub of the controversy.

In the meanwhile a new Prosecutor of the Pleas for the County of Hudson has assumed office and he, as is his right and duty, represents the state. He comes before us with the contention that George is a complete stranger to the case, that if the allowance of the writ is given legal standing here the procedure will establish a dangerous precedent and incursion upon the sovereign rights of the state and that the judgment of the Supreme Court should be reversed and the court itself be directed to dismiss the writ as improvidently granted.

When it is found that a writ of *certiorari* has been improvidently granted, this court will reverse and direct the Supreme Court to dismiss the writ. *Taylor Provision Co. v. Adams Express Co.,* 72 *N. J. L.* 220. We conclude that the judgment below should be reversed and that the writ of *certiorari* should be dismissed as improvidently granted. The record will be remanded for that purpose. This will leave effective the order for a new trial.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, EASTWOOD, BURLING, WELLS, DILL, FREUND, McGEEHAN, McLEAN, JJ. 9.