146 N.J. Super. 297 (1977)
369 A.2d 952
LOUIS ROLLERI, JOHN SALVATO, CARMEN CALABRESE, BERNARD O'BRIEN, PATRICK CARR, JOSEPH PARISO, NATHANIEL WASHINGTON, DONALD HIGGINS, AND THEODORE UPSHAW, PLAINTIFFS-RESPONDENTS AND CROSS-APPELLANTS,
v.
JOSEPH P. LORDI, PROSECUTOR OF THE COUNTY OF ESSEX, NEW JERSEY, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 13, 1976.
Decided January 21, 1977.
*300 Before Judges MATTHEWS, SEIDMAN and HORN.
Mr. R. Benjamin Cohen, Assistant Prosecutor, argued the cause for appellant (Mr. Joseph P. Lordi, Essex County Prosecutor, pro se).
Mr. Michael Critchley argued the cause for respondents (Messrs. Critchley & Spiessbach, attorneys; Mr. Michael F. Spiessbach on the brief).
The opinion of the court was delivered by SEIDMAN, J.A.D.
Plaintiffs were among a number of persons who took a Civil Service examination on July 12, 1973 for the position of county detective for Essex County. They passed and their names were certified for placement upon the employment list established by the Civil Service Commission as eligible for appointment in the event of a vacancy. When the Essex County Prosecutor made no appointments thereafter to the position of county detective, other than to fill vacancies, but did appoint six persons as county investigators, also to fill vacancies in that position, plaintiffs filed a complaint in Chancery Division to enjoin him (1) from "making appointments to the position of County investigator with the Essex County Prosecutor's Office while there exists a Civil Service list of eligible candidates for the position of County detective"; (2) "to terminate the employment of anyone who has been appointed to the position of County investigator subsequent to December 10, 1974," and (3) to meet the needs for investigative personnel through the appointment of county detectives.
Following a hearing, the trial judge entered judgment that
* * * the Defendant be and he is hereby enjoined to comply with the laws of the State of New Jersey regarding appointments to the position of County Investigator or County Detective in accordance with the following:
*301 In the event that the Defendant, from and after the date of this Order, determines to fill any vacancies in his staff of County Investigators or County Detectives, he must fill such vacancies only after first exhausting the statutory maximum of allowable appointments of the position of County Detective, pursuant to N.J.S.A. 2A:157-3.
The judge further specified that the judgment was prospective only and did not affect "County Investigators of Essex County heretofore appointed by virtue of application to the Essex County Assignment Judge."
Defendant appealed. Plaintiffs cross-appealed from that portion of the judgment which in effect barred the termination of those investigators appointed subsequent to December 10, 1974.
The issue presented, seemingly of first impression, is this: Where a county prosecutor is authorized by order of the assignment judge to employ specified numbers of detectives and investigators above the statutory limit, and thereafter the permissible numbers of detectives in that county is increased by statute, is the prosecutor required to appoint detectives up to the new limit before filling any vacancies occurring among the investigators?
We shall first dispose of two matters raised preliminarily by the prosecutor, neither of which is meritorious. The contentions are that in by-passing the Civil Service Commission, plaintiffs failed to exhaust their administrative remedies; and, assuming that recourse to the courts was proper, plaintiffs should have brought an action for mandamus in lieu of prerogative writs in the Law Division, instead of seeking a mandatory injunction in the Chancery Division. It does not really matter here whether relief should have been sought in an action at law rather than in Chancery. Under our 1947 Constitution, law and equity jurisdiction merged into the Superior Court, which court possesses original jurisdiction for all causes of action. Asbestos Fibres, Inc. v. Martin Laboratories, Inc., 12 N.J. 233, 239 (1953). The Law Division and the Chancery Divison may each exercise *302 the powers and the functions of the other when the ends of justice so require. S. v. H.M., 111 N.J. Super. 553, 557 (App. Div. 1970). The Chancery Division obtained jurisdiction of the subject matter here by the filing of the complaint. It is apparent that the facts and issues would have been the same had the complaint been drawn as one in lieu of prerogative writs. The prosecutor does not suggest that a different result might otherwise have been reached. We are satisfied in the circumstances that the Chancery Division correctly proceeded to determine the controversy before it.
As for plaintiffs' alleged failure to exhaust their administrative remedies, such exhaustion is neither jurisdictional nor absolute and may be departed from where, in the opinion of the court, the interest of justice so requires. Matawan v. Monmouth Cty. Tax Bd., 51 N.J. 291, 296 (1968). Where, as here, only a question of law is in issue, to require an exhaustion of administrative remedies "would be useless delay." Nolan v. Fitzpatrick, 9 N.J. 477, 487 (1952). It does not appear to us that the resolution of the issue involved here, which would still be subject to our appellate review if decided in the first instance by the Civil Service Commission, requires any particular agency expertness.
We shall, therefore, address ourselves to the merits of the principal issue involved in this appeal. A brief introductory review of the statutes pertaining to the appointment of county detectives and investigators, and a summary of the events preceding the institution of this litigation, are necessary for a full understanding of the issue.
N.J.S.A. 2A:157-2, which is part of the County Detectives and County Investigators Act (Revision of 1951), authorizes the prosecutor in each of the counties to appoint as county detectives
* * * such number of suitable persons, not in excess of the number, and at salaries not less than the minimum amounts, in this chapter provided, * * * to assist the prosecutor in the detection, apprehension, arrest and conviction of offenders against the law. Persons so appointed *303 shall be in the classified service of the civil service and shall possess all the powers and rights and be subject to all the obligations of police officers, constables and special deputy sheriffs in criminal matters.
The additional office or position of county investigator is set forth in N.J.S.A. 2A:157-10. It is placed in the unclassified service of the Civil Service. Such county investigators, not in excess of the number, and at salaries not less than the minimum amounts, provided in the act, may be appointed by the prosecutor in each of the counties
* * * to serve at his pleasure and subject to removal by him, and to assist the prosecutor in the detection, apprehension, arrest and conviction of offenders against the law. Persons so appointed shall possess all the powers and rights and be subject to all the obligations of police officers, constables and special deputy sheriffs, in criminal matters.
Prior to its amendment by L. 1974, c. 171, § 1, effective December 10, 1974, N.J.S.A. 2A:157-3 authorized the appointment in counties of the first class (including, of course, Essex County) of not more than 30 county detectives, "of whom one may be designated chief of county detectives, 2 captains of county detectives, and not more than 6 lieutenants of county detectives." In such counties, the number of investigators to be appointed was also fixed at not in excess of 30. N.J.S.A. 2A:157-11.
The 1974 amendment increased the number of county detectives in first class counties to a maximum of 50, and, in addition to a chief of county detectives, provided for two deputy chiefs, four captains, and not more than 12 lieutenants. There was no change in the permissible number of county investigators.
Between 1966 and 1974, after the statutory maximum number of county detectives and investigators had been reached in Essex County and additional personnel were needed, the prosecutor from time to time applied to the assignment judge of the county and obtained authority to appoint detectives and investigators in excess of the statutory *304 limit. The validity of such procedure is not in dispute. See In re Application of Schragger, 58 N.J. 274 (1971); In re Application of Bigley, 55 N.J. 53 (1969); N.J.S.A. 2A:158-7; N.J.S.A. 2A:157-19. By the latter part of 1974 the appointment of 42 additional investigators and 2 additional detectives was authorized in this fashion, so that the prosecutor now had a total complement of 72 investigators and 32 detectives. After December 10, 1974, as noted earlier, only one detective and six investigators were appointed by the prosecutor, in all cases to fill vacancies which occurred.
In his oral opinion at the conclusion of the hearing, the trial judge said, in pertinent part, as follows:
* * * Bearing in mind that there is no difference between investigators and detectives, they are fungible in that context. The only difference is that one is non-civil service, and the other is civil service. The intent of the legislature in enacting the amendment was that the Prosecutor could and should if necessary have an additional fifty civil service personnel in his detective department. * * *
This Court now holds that where the legislature has authorized manpower for the Prosecutor's office in the form of county detectives, the Prosecutor must appoint up to the maximum authorized by the legislature before he can make appointments to his staff as a result of emergency law enforcement orders entered by the assignment judge. I perceive that to be the legislative intent gathered from the statutes cited and from the decisions of the New Jersey Supreme Court in the cases cited. * * *
* * * [A]s attrition takes place in staff, [the prosecutor] shall so make his appointment that they will be structured in accordance with the amount which the legislature tells him. In other words, thirty investigators and fifty detectives, and once he has done what the legislature has prescribed, then he can appoint more investigators in accordance with the assignment judge's ruling. * * *
It is evident from the foregoing that the trial judge construed the increase in the number of detectives as tantamount to a legislative determination of the Essex County Prosecutor's needs for investigative personnel, thereby, in effect, superseding or modifying the prior order of the assignment judge in that county which had increased the number of investigators beyond the statutory maximum. He also seems to have held the view that the statute was a mandate to the *305 prosecutor to appoint detectives instead of investigators, until the new maximum was reached, particularly since the two categories were "fungible" in the sense that their functions and duties were the same. We do not agree with the views expressed by the trial judge. They do not sufficiently take into account the unique position occupied by a county prosecutor and the part played by the assignment judge in the implementation of the prosecutor's duties and responsibilities.
N.J.S.A. 2A:158-4 provides that the criminal business of the State shall be prosecuted by the Attorney General and the county prosecutors. The latters' authority in such matters, in the absence of supersession by the Attorney General, is exclusive. State v. Walls, 138 N.J. Super. 445, 449 (App. Div. 1976); State v. Longo, 136 N.J.L. 589, 593 (E. & A. 1947). It is the prosecutor's function to use "all reasonable and lawful diligence for the detection, arrest, indictment and conviction of offenders against the laws." N.J.S.A. 2A:158-5. To that end he is allowed a staff of assistant prosecutors, detectives and investigators. It was emphasized in State v. Winne, 12 N.J. 152, 167 (1953), that the Legislature has not "merely imposed duties of vast importance to the public on the county prosecutor," and seen to it that his office is sufficiently staffed; it has also given him "power not paralleled elsewhere in the county to incur expenses in `the detection, arrest, indictment and conviction of offenders' against the law." See N.J.S.A. 2A:158-7; Cetrulo v. Byrne, 31 N.J. 320, 325 (1960). The Legislature clearly "intended to give him dominant position and the primary responsibility for the enforcement of the criminal laws, not merely by conferring authority on him but by giving him the means of implementing such authority." State v. Winne, supra, 12 N.J. at 167.
Although the Legislature, in authorizing the appointment by the prosecutor of county detectives and county investigators, has fixed the maximum number in each category, according to the class of the county, those limits are not immutable. By providing in N.J.S.A. 2A:157-19 *306 that the statute shall not be construed "to limit the power of any prosecutor, duly conferred upon him by law, to incur expenses" in the performance of his duties, the Legislature "expressly disavowed an intent to restrain the basic statute of 1874 under which the prosecutor may go beyond the budget appropriations with the approval of the Assignment Judge." In re Application of Bigley, supra, 55 N.J. at 59. Thus, if the prosecutor needs additional investigative personnel, he may appoint them within the limitations prescribed by law and the judicial decisions. Cetrulo v. Byrne, supra, 31 N.J. at 328.
Beyond this, the Legislature as well as the courts "have long recognized the strong policy considerations which dictate that since the county prosecutor is charged with heavy enforcement responsibilities he must be given broad powers to appoint his own personnel * * *." Cetrulo v. Byrne, supra at 328. As we have seen, the Legislature established the positions of detectives and investigators. Although the powers and rights of both are identical, investigators were expressly excluded from the classified service of Civil Service. The clear legislative purpose and plan in providing for investigators was to "[afford] to the county prosecutor a confidential investigatory staff serving at his pleasure and removable at his will notwithstanding the terms of any earlier tenure enactments." Brennan v. Byrne, 31 N.J. 333, 336 (1960). We do not consider the holders of the two positions to be "fungible," as did the trial judge here. Despite the identity of duties and responsibilities among detectives and investigators, it is clear that the Legislature intended to vest in the prosecutor a great deal of latitude and discretion in the selection of his investigative staff, with the tenured position of county detective balanced by investigators serving at his pleasure in whom, as was aptly put in the statement attached to the original bill creating the position (which became L. 1931, c. 164), "he has that degree of confidence resulting from personal, intimate knowledge."
*307 We do not discern in the statutory scheme any intent to prefer detectives over investigators in the matter of appointments. This would clearly not be so where the statutory maximum has not been reached in either category. In such case, it would be absurd to hold that the appointment of investigators would have to await the filling up of all detective openings. Nor do we find any mandate that a prosecutor must appoint investigative personnel up to the full statutory limit in either category. There can be no doubt whatever, at least within the statutory maximum in each category, that the prosecutor has complete discretion to determine whether to appoint detectives or investigators, and in what numbers.
It is appropriate, at this point, to examine the role of the assignment judge in the determination of a prosecutor's needs. In re Application of Bigley and In re Application of Schragger, supra, are controlling. Bigley concluded, after a review of the legislative history, that for almost 100 years the Legislature has adhered to the policy that the ultimate determination of how much money should be provided for the discharge of the prosecutor's duties should rest with a judicial officer, and that N.J.S.A. 2A:158-7 commits to the assignment judge the authority to require a board of chosen freeholders to meet the needs of the prosecutor not provided for by the board in its regular or emergency appropriations for that office. 55 N.J. at 59. See Schragger, 58 N.J. at 277. In the performance of that responsibility,
* * * the Assignment Judge acts as a legislative agent rather than as a judicial officer. Hence he does not sit in review of the action or inaction of the freeholders but rather makes his own original determination. Nonetheless the freeholders do speak for the taxpayers who must meet the added charge, and it therefore is appropriate, notwithstanding the absence of a legislative mandate, that the prosecutor make an initial request of the freeholders unless circumstances excuse that course. For like reasons, it is appropriate that the prosecutor give notice to the freeholders of his application before the Assignment Judge so that the freeholders may communicate their views. [Bigley, 55 N.J. at 61]
*308 We made reference earlier to the authority of the prosecutor to appoint additional personnel "within the limitations prescribed by law and the judicial decisions." Cetrulo v. Byrne, supra. We noted then that in the appointment of county detectives and investigators, despite the fixing of their numbers by statute, the prosecutor may go beyond the budget appropriations with the approval of the assignment judge. Plaintiffs construe Schragger and Bigley to hold that the purposes of the assignment judge sitting as legislative agent are to evaluate the manpower, among other things, needed for the prosecutor's office, absent a specific determination made by the Legislature itself. We find no such limitation on the power of the assignment judge in either of the cited cases. In fact, Schragger clearly indicates otherwise:
* * * The Legislature need not itself fix an unalterable number of assistant prosecutors or detectives or investigators or other personnel of the prosecutor's office or their salaries. The Legislature may delegate to others the task of deciding the ultimate needs of a prosecutor. * * *
* * * Hence it is quite appropriate for the Legislature to ask a judicial officer to pass upon the monetary requirements of the prosecutor * * *. [58 N.J. at 278-279]
Here, the assignment judge, in furtherance of his responsibility as legislative agent, issued orders from time to time, prior to December 1974, authorizing the prosecutor to appoint investigative personnel above the statutory limits. Plaintiffs complain that the prosecutor "abused his discretion by appointing a grossly disproportionate number of county investigators who serve at his pleasure in comparison to civil service candidates who have complied with the Civil Service examination procedure for merit and fitness." That contention, even if meritorious, is not germane to this appeal. Apart from that which we have already said on the subject, the short answer is that, in accordance with existing law, the assignment judge made a determination of the prosecutor's needs upon the latter's application. His orders in that regard were subject to appellate review at the *309 time. It does not appear that such relief was sought by any one claiming to be aggrieved thereby. The issue cannot be raised now.
While the trial judge disclaimed any intent to review the previous orders of the assignment judge; he seems, nonetheless, to have accepted plaintiffs' argument that "the assignment judge's order is a back-up measure, to be used by the Prosecutor when the compliment [sic] of his office, provided for by the legislature, is inadequate." But his determination, whether intended or not, had the effect of superseding and modifying those orders. Therein, we believe, lies the basic flaw in the action taken by the trial judge. It was an intrusion into the prerogative of the assignment judge. We do not mean to imply that there is necessarily a continuing need for all the supernumerary investigators now that the Legislature has increased the permissible number of detectives. On the other hand, it may well be that the prosecutor requires the services of all the investigators, despite the additional county detectives. We cannot tell from the record before us what the prosecutor's personnel needs are at the present time, or how those needs are best to be fulfilled. The point we stress is that whether or to what extent the existing orders should continue to be in force is a matter that must be resolved by the agent designated by the Legislature for that purpose, i.e., the assignment judge who issued those orders, subject, of course, to appellate review, if necessary. To that end, a copy of this opinion will be forwarded to the assignment judge of Essex County for his information and such action, if any, as he may deem appropriate and necessary in the circumstances.
The judgment is reversed and the complaint is dismissed. No costs.