199 N.J. Super. 378 (1985)
489 A.2d 1169
JOHN N. ZAMBONI, PLAINTIFF-APPELLANT,
v.
JOHN STAMLER, UNION COUNTY PROSECUTOR'S OFFICE, ET AL., DEFENDANTS-RESPONDENTS. RICHARD LAZO, NICHOLAS GALLICHIO, MICHAEL J. HUGHES, PLAINTIFFS-APPELLANTS,
v.
JOHN STAMLER, UNION COUNTY PROSECUTOR, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 13, 1985.
Decided March 6, 1985.
*379 Before Judges MICHELS, PETRELLA and BAIME.
Robert Bradley Blackman argued the cause for appellant John N. Zamboni (Patrick W. Foley, on the brief).
Brian Neary argued the cause for appellants Lazo, Gallichio and Hughes (Woodcock & Kingman, attorneys; Brian Neary, on the brief).
Richard P. Rodbart and Kenneth N. Siegel, Assistant Prosecutors of Union County, argued the cause for respondent John H. Stamler (Richard P. Rodbart, of counsel and on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
This appeal concerns two consolidated actions instituted by several Union County detectives challenging the legal efficacy of a reorganization plan adopted by the prosecutor. At issue is the authority of the prosecutor to create superior officer positions within the unclassified service of his investigative staff and to appoint detectives to temporarily serve in that capacity.
A brief description of the applicable statutory provisions is necessary for a full understanding of the issues presented. N.J.S.A. 2A:157-2 vests in the county prosecutor the authority to appoint detectives to assist "in the detection, apprehension, arrest and conviction" of offenders. Members of the detective staff are in the classified civil service and their appointment and promotion are rigidly controlled by both statutory and *380 regulatory provisions. N.J.S.A. 2A:157-10 empowers the county prosecutor to appoint investigators whose statutory functions are identical with those of the detectives. However, investigators are not in the classified civil service. Rather, they serve at the prosecutor's pleasure and "are subject to removal by him" for any reason and at any time. N.J.S.A. 2A:157-10.
Under the reorganization plan, the prosecutor established superior officer positions within the unclassified service of the county investigators. The chain of command generally paralleled the hierarchial structure of the county detectives. Selected members of the detective staff were offered superior officer positions as investigators. Those detectives who accepted such offers executed temporary leaves of absence from their classified positions. They retained the right to be reinstated to their former classified status at the expiration of their leaves of absence. The prosecutor also advised the detectives that he would not consider promotions within the classified ranks. Hence, the sole means of advancement under the prosecutor's reorganization was by way of accepting a supervisory or superior officer position in the unclassified service of investigators. The articulated objective of the plan was to provide greater flexibility within the county prosecutor's office. An auxiliary purpose was to insure greater stability and expertise in the traditional trial preparatory positions.
Following adoption of the plan, plaintiffs instituted separate actions in lieu of prerogative writ. Several of the detectives also sought the intervention of the Department of Civil Service. Plaintiffs' attack on the newly adopted reorganization plan was two-fold. First, they contended that the statutory scheme, N.J.S.A. 2A:157-1 et seq., did not authorize the creation of superior officer positions among the county investigators. Second, they claimed that it was unlawful for the county detectives to retain their classified status while temporarily serving as investigators. The principal thrust of their argument was bottomed upon the assertion that the prosecutor had improperly *381 circumvented civil service regulations in an attempt to confer paramount authority upon the county investigators.
The Department of Civil Service refused to intervene. By letter dated May 17, 1983, directed to several of the complaining detectives, the Department's Director of County and Municipal Government Services noted that the prosecutor had "wide latitude and discretion in [determining] the size and composition" of his unclassified investigative staff. Nothing in the civil service laws and rules was said to specifically preclude the establishment of supervisory positions among investigators. He also noted that the "prosecutor's action in offering certain permanent employees in the county detectives service appointment as county investigators was not violative of civil service laws and rules." So too, the granting of mutually agreed upon leaves of absence to such employees in order to preserve their entitlement to their permanent classified status while serving in such positions was considered to be consistent with applicable regulatory provisions. In an August 9, 1983 letter, the director responded to an inquiry from Detective Zamboni. The director noted that for civil service purposes supervisory positions in the investigators' ranks would continue to be recorded under the title of County Investigator in the unclassified service (N.J.S.A. 2A:157-12) because no other title is specified in the statutes. The Department was more receptive, however, to allegations made by several of the detectives that as a result of the reorganization plan they had been assigned duties outside of their job classifications. In that regard, the Department embarked upon a series of "civil service desk audits" designed to determine whether the reorganization constituted an improper encroachment upon the responsibilities of the detectives resulting in a de facto demotion. At oral argument, we were advised that those matters remain pending before the Department.[1]
*382 Plaintiffs' prerogative writ action also proved unavailing. All parties moved for summary judgment upon the basis that there were no genuine issues of material fact and, thus, the matter was ripe for judicial resolution. In a published decision, Judge Beglin concluded that the reorganization plan was wholly consistent with civil service rules and regulations. Zamboni v. Stamler, 194 N.J. Super. 598, 606-607 (Law Div. 1984). Specifically, he held that the statutory power to designate and appoint a sizable staff of investigators carried with it the implied authority to create superior officer positions within its ranks. Id. at 606. According to the court, the absence of designated superior officer positions in the statutory sections dealing with county investigators represented nothing more than a legislative recognition of the unclassified, untenured nature of the office itself. Id. at 606-607. The trial judge also found that the use of temporary leaves of absence to insure protection of the classified status of the detectives chosen to serve as superior investigative officers was fully supported by civil service statutes and regulations. Id. at 607. Consequently, defendant's motion for summary judgment was granted. This appeal followed.
We affirm the order granting defendant's motion for summary judgment substantially for the reasons set forth in Judge Beglin's opinion. Whatever reservations one might harbor with respect to the wisdom of the prosecutor's reorganization, we conclude that the applicable civil service rules and regulations were followed. In that regard, we agree with the position adopted by the Department of Civil Service that the prosecutor *383 is vested with broad discretion in determining the composition and organization of his unclassified investigative staff.
Nevertheless, we emphasize the limits of our decision. We have no occasion at this time to decide whether by virtue of the newly adopted plan the detectives have been assigned duties falling beyond the purview of their job classifications. As we have noted, that question is presently the subject of investigation by the Department of Civil Service. We, thus, perceive no sound reason to resolve that issue in advance of the Department's findings. Nor do we address questions pertaining to the prosecutor's expressed unwillingness to promote detectives within the ranks of the classified service. Suffice it to say, the issue presented is purely hypothetical at this point.[2] We will not render advisory opinions or function in the abstract; nor will we decide a case based upon facts which are undeveloped or uncertain. See New Jersey Ass'n for Retarded Citizens v. Dept. of Human Serv., 89 N.J. 234, 241 (1982); Crescent Pk. Tenants Assoc. v. Realty Eq. Corp. of N.Y., 58 N.J. 98, 107 (1971); New Jersey Turnpike Auth. v. Parsons, 3 N.J. 235, 240 (1949).

I.
Although the precise question presented here is of first impression, the broad parameters of prosecutorial discretion pertaining to the composition of the unclassified service of investigators have been firmly established in an unbroken line of judicial decisions. In Cetrulo v. Byrne, 31 N.J. 320 (1960), for example, our Supreme Court held that prosecutors were *384 vested with the exclusive authority to appoint and remove unclassified investigators. In a somewhat related context, the Court in Brennan v. Byrne, 31 N.J. 333 (1960), upheld the right of the prosecutor to dismiss investigators notwithstanding the terms of the Veteran's Tenure Act. More recently, in Rolleri v. Lordi, 146 N.J. Super. 297 (App.Div. 1977), we concluded that the prosecutor's prerogatives include the discretion to appoint investigators while leaving vacant classified positions in the detective staff.
These decisions rest upon judicial and legislative recognition of the ancient origins of the prosecutor's office and the heavy law enforcement responsibilities with which it is charged. See, e.g., Morss v. Forbes, 24 N.J. 341, 365 (1957); Winne v. Bergen County, 21 N.J. 311, 322 (1956); State v. Winne, 12 N.J. 152, 164 (1953); Murphy v. Bd. of Chosen Freeholders of Bergen Co., 110 N.J.L. 9, 10 (Sup.Ct. 1932); Lindabury v. Bd. of Chosen Freeholder of Ocean, 47 N.J.L. 417, 424 (Sup.Ct. 1885). The statutes reflect a "fixed legislative policy to cast on the county prosecutor responsibility for the detection, apprehension, arrest and conviction of criminals in his county." State v. Winne, supra, 12 N.J. at 167. The Legislature has conferred upon him a power unparalleled in the county to incur expenses in the performance of his official duties, ibid., and has provided special budgetary techniques designed to insure his financial ability to execute his constitutional powers. See, e.g., In re Application of Schragger, 58 N.J. 274 (1971); In re Application of Bigley, 55 N.J. 53 (1969); N.J.S.A. 2A:158-7; N.J.S.A. 2A:157-19. The clear statutory design was "to give him dominant position and the primary responsibility for the enforcement of the criminal laws" in his jurisdiction. State v. Winne, supra, 12 N.J. at 167.
Obviously, the powers conferred upon the prosecutor by statute do not require him to personally "detect, arrest, indict and convict." Id. at 168. Rather, the statutory scheme allows him a staff of assistant prosecutors, detectives and investigators. As we have noted, the Legislature in N.J.S.A. 2A:157-2 *385 and N.J.S.A. 2A:157-10 established the positions of detectives and investigators. Although the powers and obligations of both offices are identical, investigators were expressly excluded from the classified civil service. Rolleri v. Lordi, supra, 146 N.J. Super. at 306. As stated by our Supreme Court in Brennan v. Byrne, supra, 31 N.J. at 336, the plain legislative purpose was to provide the prosecutor with "a confidential investigatory staff serving at his pleasure and removable at his will...." See also Cetrulo v. Byrne, supra, 31 N.J. at 332.
We note that with the passage of time the number of unclassified investigator positions has vastly increased by virtue of amendatory legislation and judicial orders. The point to be stressed is that the unclassified investigative service is no longer comprised of a small cadre of prosecutorial assistants. In Union, a county of the second class with a population of approximately 504,000, the prosecutor is authorized to appoint 30 county investigators. At oral argument, we were advised that Union County is by no means atypical. It is clear that a work force of that size cannot be effective if it does not know how it is to function. Under these circumstances, we perceive nothing in the statutory scheme or in the applicable civil service regulations which would preclude a prosecutor from structuring his investigative staff to insure its proper functioning.
We agree with Judge Beglin's conclusion that the absence of specific statutory authorization does not bar the prosecutor from creating superior officer positions within the unclassified investigative service. We have already alluded to the decisions of our Supreme Court which have recognized that the prosecutor "must have free rein to select and remove" county investigators. Cetrulo v. Byrne, supra at 332. In our view, the prosecutor is vested with the corollary authority to organize and structure his investigative staff consonant with his perception of the particularized needs of his office. Unlike the clearly defined chain of command applicable to the classified detective service, the prosecutor, by statute and case law, is accorded substantial discretion and flexibility in structuring his investigative *386 staff.[3] His decisions and choices in that regard are highly personal. Each incumbent of the office has the prerogative to determine the composition and organization of the unclassified investigative service during his tenure. We discern nothing in the legislative scheme denying the prosecutor that right.

II.
We are also satisfied that the applicable civil service statutes and rules permit detectives to take temporary leaves of absence in order to serve in the capacity of unclassified investigators. N.J.S.A. 11:24A-6.1 provides in pertinent part as follows:
The head of any department or the appointing authority in any county ... may grant leaves of absence without pay to permanently employed civil service employees for periods not exceeding six months at any one time for reasons satisfactory to such head or appointing authority, pursuant to regulations governing such leaves of absence established and approved by the governing body of the county....
N.J.S.A. 11:24A-6.2 empowers the appointing authority to grant an additional six month leave of absence. However, any further leave beyond the one year period may be granted only upon approval in writing by the Department of Civil Service. N.J.S.A. 11:24A-6.2. Finally, N.J.S.A. 11:26C-1 provides that the employee is to "be entitled to resume the office, position or employment [previously] held by him" at the expiration of his leave of absence. These statutory provisions are supplemented by rules which have been promulgated by the Department. See, e.g., N.J.A.C. 4:1-17.6(c). We are convinced that these statutory and regulatory provisions are fully controlling and *387 expressly authorize the prosecutor to grant temporary leaves of absence, thereby permitting classified detectives to serve as investigators.
Plaintiffs' reliance upon our decision in Bergen County v. Dept. of Civil Service, 115 N.J. Super. 90 (App.Div. 1971), is clearly misplaced. There, the board of chosen freeholders attempted to transfer members of the county police force to full-time classified detective positions in the prosecutor's office without first obtaining approval from the Department of Civil Service. We held that the county's action violated the provision of N.J.S.A. 11:22-8. That statute reads as follows:
A person holding an office or position in the classified service may, on his own request and with the consent of the commission, be transferred to a similar office or position in another office, department or institution. No transfer shall be made from an office or position in one class to that of another class nor to an office or position for original entrance to which there is required by this subtitle, or the rules adopted pursuant thereto, an examination involving essential tests or qualifications different from or higher than those required for original entrance to an office or position held by such person.
We concluded that this section was expressive of the legislative scheme that transfers are not to be a matter of routine "but made only under conditions and upon terms which harmonize with the overall concept of the civil service system." Id. at 94.
Our decision in Bergen County v. Dept. of Civil Service, supra, is plainly distinguishable. We are not concerned here with an attempt to circumvent civil service rules by permanently transferring persons to classified detective positions. As we expressly pointed out in Bergen County, supra at 95, "[t]he prosecutor had the power ... to appoint to the unclassified position of county investigator any qualified individuals, including members of the Bergen county police." (emphasis added). We noted, however, that such persons would not be accorded civil service protection in their positions as investigators, but rather would serve at the pleasure of the prosecutor. Id. at 96.
More importantly, our decision in Bergen County, supra, pertained to a permanent transfer of law enforcement personnel *388 from one classified position to another without civil service approval.[4] Such a transfer is clearly prohibited by the provisions of N.J.S.A. 11:22-8. In contrast, this appeal concerns the right of the prosecutor to grant temporary leaves of absence to detectives so that they may serve in the capacity of unclassified investigators. As noted previously, the Department of Civil Service has not interposed any objection in that regard. Moreover, the prosecutor's reorganization plan does not preclude the Department from intervening at the appropriate time. We, again, point to the provisions of N.J.S.A. 11:24A-6.2 and N.J.A.C. 4:1-17.6(c) which mandate the Department's written approval with respect to leaves of absence extending beyond the period of one year.

III.
Although not expressly articulated, we perceive an overriding concern on the part of plaintiffs that under the prosecutor's reorganization detectives will be supervised by unclassified investigators. In Rolleri v. Lordi, supra, 146 N.J. Super. at 306, we noted that the two positions are not fungible despite the fact that the powers and obligations of both are identical. We do not discern in the statutory scheme any intent to prefer detectives over investigators. Ibid. Nevertheless, it bears repeating that the prosecutor is obliged to comply with all applicable civil service statutes and rules. We merely emphasize that the Department of Civil Service is presently considering whether the prosecutor's reorganization has resulted in an unlawful encroachment upon the statutory duties and responsibilities of the detectives. Hence, we need not address that *389 issue at this time. See Boss v. Rockland Elec. Co., 95 N.J. 33, 41 (1983).
In sum, we are satisfied that the prosecutor may lawfully structure and organize his unclassified investigator staff and create supervisory and superior officer positions toward that end. So too, we are convinced that the prosecutor may grant leaves of absence to members of the detective service so that they may temporarily serve as investigators. Accordingly, the order granting defendant's motion for summary judgment and dismissing plaintiffs' complaint is affirmed.
NOTES
[1] The detectives sought to appeal those portions of the Department's decision which concluded that the reorganization plan comported with applicable civil service statutes and rules. The matter was designated a contested case and was submitted to the Office of Administrative Law. The administrative law judge assigned to the appeal dismissed the matter in light of the decision of the Superior Court, Law Division, granting defendant's motion for summary judgment. Nevertheless, the detectives' allegations that the reorganization resulted in their assignment to duties outside of the parameters of their job classification was not considered. As noted, those allegations are presently being investigated by the Department.
[2] Nevertheless, we know of no statute which requires the prosecutor to fill a vacancy. Nor does the Civil Service Act contain such a mandate. Marranca v. Harbo, 41 N.J. 569, 575 (1964); City of Hackensack v. Winner, 162 N.J. Super. 1, 9 (App.Div. 1978), mod. and aff'd 82 N.J. 1 (1980); Capibianco v. Civil Service Commission, 60 N.J. Super. 307, 317 (App.Div. 1960). See also Dept. of Law & Pub. Safety v. State Troopers Ass'n, 179 N.J. Super. 80, 92 (App.Div. 1981); Lavitz v. Civil Service Commission, 94 N.J. Super. 260, 264 (App.Div. 1967).
[3] We note that the statutes permitting the prosecutor to appoint assistant prosecutors are similarly silent with respect to the manner in which the legal staff is to be organized. See N.J.S.A. 2A:158-1 et seq. The only positions specifically named in the statutes are the county prosecutor and his first assistant. Nevertheless, no one currently disputes the authority of the prosecutor to structure his legal staff in the manner he deems advisable. Prosecutors have historically created sections, bureaus and units within their offices and have appointed chiefs, deputy chiefs and section heads to supervise them.
[4] N.J.S.A. 11:22-8 has been construed to apply solely to permanent consentual transfers. See Caldaro v. Ferber, 39 N.J. 314, 321 (1963). Nevertheless, our Supreme Court has held that the statute does not constitute an implied prohibition against involuntary temporary transfers. Ibid. Such temporary transfers of classified personnel are subject to regulations promulgated by the Department of Civil Service. See In re Appeal of Lembo, 151 N.J. Super. 242, 247 (App.Div. 1977). See also N.J.A.C. 4:1-15.5.